Chief Judge Desmond.
The question for decision: Will the courts hold invalid the adoption by a board of education of a " zoning plan” for a new public school because the board in addition to other relevant matters took into account, in delimiting the zone, the factor of racial balance in the new school? Stating the issue in another form: Does an otherwise lawful and reasonable districting plan for a newly instituted *197 school become unlawful because it is intended to, and does, result in an enrollment which is one-third negro, one-third Puerto Bican and one-third non-Puerto Bican white?
Special Term answered the posed query in the affirmative, holding that the zone so established violated section 3201 of the Education Law. That statute which is the only basis for Special Term’s outlawry of the challenged districting reads thus: “Bo person shall be refused admission into or be excluded from any public school in the state of Bew York on account of race, creed, color or national origin.” The court reasoned this way: since the children on whose behalf this proceeding was brought would, had not the new school (Junior High School 275) been built, attend a different school (Junior High School 285) in their owu. “ neighborhood ”, their assignment to No. 275 was, according to Special Term, an exclusion from No. 285 and so violative of section 3201.
The Appellate Division saw the case quite differently. Section 3201, said the majority, was on its face and from its history and plain purpose, an anti-segregation statute only, a repealer of an old New York law (L. 1894, ch. 556, tit. 15, § 28) which had authorized separate schools for Negroes. The earlier statute had been held constitutional in 1900 in People ex rel. Cisco v. School Bd. of Borough of Queens (161 N. Y. 598) and section 3201 was a legislative overruling of the Cisco ruling (see, also, Penal Law, § 514, and Civil Bights Law, §§ 40, 41). If, wrote the Appellate Division majority in the present case, section 3201 is to be construed so as to invalidate a zoning plan because the plan accomplishes integration, then section 3201 has been turned into a segregation law—a result exactly opposite to its purpose.*, * Emphasizing the obvious, the court remarked that: “Boundary lines for attendance at a new school must be fixed somewhere ” and that “ A zone for a new school must necessarily take away part of the zone or zones theretofore established for already existing schools.” Two of the Appellate Division Justices, concurring for reversal, came to the same result by a simpler route. The board, says the concurring opinion, acted reasonably and ‘‘ within the limits of sound discretion ’ ’. The zoning, they found, was “not forced solely by racial considerations”. If, they said, the racial factors are disregarded, other considerations “ point *198 irrevocably to the placement of the children in the very school which the board has selected ’ ’. Since, then said the concurring Justices, application of all other appropriate and available criteria dictated the same result, “It is unnecessary to this decision to consider the right of the Board of Education to inquire into the race or color of the children
The facts are not in dispute. The new school is Junior High School 275 located in the Brownsville section of Brooklyn and authorized by the city’s Board of Estimate for the purpose of relieving overcrowding in several existing junior high schools. The task of preparing a zoning map for the new facility was first assigned to a Dr. Blodnick, Assistant Superintendent for Local School Districts 41 and 42 (the new school is in District 42). The Blodnick,nlan received some community support but higher officials of the Board of Education rejected it for several reasons, one of them being the failure of Dr. Blodnick so to draw his zone as to prevent any measure of de facto segregation of negro and Puerto Rican students into the new building. Under that first plan the enrollment would have been 52% negro, 34% Puerto Rican and 14% non-Puerto Rican white.
A new proposal was then formulated by Assistant Superintendent of Schools Turner who was also head of the Central Zoning Unit. He modified Dr. Blodnick’s districting map by excluding a northerly part with a heavy negro population and including a predominantly white area where reside petitioners’ 2 children and some 49 other white children on whose behalf the proceeding is brought. The Turner modification was adopted by the Board of Education with the result that new Junior High School 275’s population will be approximately one-third negro, one-third Puerto Rican and one-third nonPuerto Rican white. The children whose parents are contesting the Turner zoning live within walking distance of new School 275 and nearer to — or at least no farther from — School 275 than School 285. The latter building, petitioners assert, is in their residential “ neighborhood ” which contrasts to the part-slum, part-deteriorated residence area and part-high-rise apartment “neighborhood” in which was built new Junior High School 275. It should be mentioned that all the children scheduled for admittance into School 275 will be in their first *199 year of junior high school so that no one is being transferred from one school to another.
There can be no doubt (since Brown v. Board of Educ., 347 U. S. 483) that de jure segregation is unconstitutional. The question, however, as to whether there is an affirmative constitutional obligation to take action to reduce de facto segregation is simply not in this case. The issue, we repeat, is: May (not must) the schools correct racial imbalance? The simple fact as to the plan adopted and here under attack is that it excludes no one from any school and has no tendency to foster; or produce racial segregation.
Therefore, we hold, section 3201 of the Education Law is in no way violated by this plan, nor was there any other legal impediment to its adoption.
If, applying the conventional (CPLR 7803, subd. 3) test of an administrative ruling, we look to see whether the Turner zoning is arbitrary, capricious or unreasonable, the answer must again be in the negative. The Board of Education has express statutory power to select a site for a new school and to “determine the school where each pupil shall attend ” (Education Law, §§ 2556, 2503, subd. 4, par. d). There are no oppressive results of the choice here made by the board. No child will have to travel farther to new School 275 than he would have to go to get to his “neighborhood” school.
The order should be affirmed, without costs.