In the Matter of VINCENT DI SANO et al., Individually and as Representatives of No. 40 School District Association, as Taxpayers of the City of Rochester, and as Parents of Students Attending No. 40 School, Suing in Behalf of Themselves and All Other Persons Similarly Situated, Respondents, v. LLOYD V. STORANDT et al., Constituting the Board of Education of the City of Rochester, et al., Appellants, and ROCHESTER AREA COUNCIL OF CHURCHES, INC., et al., Intervenors-Appellants.

Fourth Department, October 22, 1964.

*John R. Garrity* and *Arthur B. Curran, Jr.*, for appellants.

*John B. McCrory* for Rochester Area Council of Churches and another, intervenors-appellants.

*John B. McCrory* and *Robert A. Feldman* for Jewish Community Council of Rochester, Inc., and another, intervenors-appellants.

*John B. McCrory* and *Herman J. Walz* for Nathaniel J. Hurst and another, intervenors-appellants.

*William L. Clay* for respondents.

DEL VECCHIO, J. This appeal is from a judgment enjoining and restraining the Board of Education and the Superintendent of Schools of the City of Rochester from carrying into effect an open enrollment program and from transferring students from one public school to another in the City of Rochester for the purpose of correcting so-called racial imbalance.

On June 14, 1963 the State Commissioner of Education issued a special message to all chief local school administrators and presidents of Boards of Education in the State by which he set forth the policy of the Board of Regents disapproving homogeneous grouping of minority races in public school systems, announced the determination by the Department of Education "that the racial imbalance existing in a school in which the enrollment is wholly or predominantly Negro interferes with the achievement of equality of educational opportunity and must therefore be eliminated from the schools of New York State", and requested a report of plans for eliminating imbalance in districts where it existed. For the purpose of the report, a racially imbalanced school was defined as one having 50% or more Negro pupils enrolled.

Pursuant to this directive, appellants Board of Education of the City of Rochester caused a study and report to be prepared which included a number of proposals looking toward the

correction of racial imbalance as it was found to exist in the city system.

Thereafter, on November 21, 1963, in carrying out its responsibility to achieve an equitable balance consistent with principles of sound education, the board adopted a resolution directing the Superintendent of Schools to complete plans for a program of "Open Enrollment", one of the alternatives contained in the report. By the plan, which was subsequently put into effect, a number of schools having a high percentage of non-white students were designated as "sending" schools, and a number of schools with unused classroom space having a non-white student population less than the city average were classified as "receiving" schools. For the purpose of reducing racial imbalance, students enrolled in sending schools were permitted to transfer to receiving schools, upon request for such transfer by their parents. Under the Open Enrollment Plan transportation and lunch facilities were provided for those being transferred.

Petitioners, parents of white students attending a receiving school, have secured an order from Special Term enjoining the Board of Education and the Superintendent of Schools from carrying into effect the Open Enrollment Plan and from implementing the board's resolution adopted November 21, 1963. In granting the order, the court below held that the adoption of the plan and the subsequent implementation thereof in sending and receiving schools was an unconstitutional exercise of power by the Board of Education and constituted discrimination by denying Negro children attendance at their neighborhood school solely because of color.

Upon stipulation by the parties, questions raised by the petition as to the administrative propriety of a specific transfer of pupils from School No. 4 to School No. 40 — which was alleged to be discriminatory, arbitrary, and capricious — were subordinated to a determination of the constitutionality of the open enrollment program and, by reason of the court's conclusion on that issue, were left undecided. We also were asked to pass only upon constitutionality so that the only question for consideration on this appeal is whether petitioners have met the burden of establishing that the action of the school board in adopting the Open Enrollment Plan was unconstitutional, and we pass upon no other question.

We do not agree with the reasoning of Special Term, and point out that authorities such as *Bell* v. *School City of Gary* (213 F. Supp. 819, affd. 324 F. 2d 209, cert. den. 377 U. S. 924) and *Henry* v. *Godsell* (165 F. Supp. 87) relied upon by Special

Term and by petitioners, are not applicable. Those decisions hold merely that a school board may not be required, by reason of constitutional provisions, to end *de facto* segregation. The present case is not one where a Negro parent is seeking to compel a Board of Education to correct imbalance. On the contrary, the Rochester School Board has itself voluntarily entered upon a program, the purpose of which is to diminish imbalance as it presently exists. That such a program was adopted to comply with the policy and directive of the State Commissioner of Education condemning the grouping of racial minorities does not make the resolution invalid. It has already been determined in *Matter of Vetere* v. *Mitchell* (21 A D 2d 561) that the Commissioner's determination as to the deleterious effects of *de facto* segregation is not violative of any constitutional provision. Furthermore, the Court of Appeals in *Matter of Balaban* v. *Rubin* (14 N Y 2d 193, cert. den. 379 U. S. 881) and this court in *Matter of Strippoli* v. *Bickal* (21 A D 2d 365) have both held, in cases presenting substantially the same issue as here presented, that a school board may correct racial imbalance by the assignment of pupils to particular schools. " [T]he fact that integration is not compelled by the Federal Constitution or by the *Brown* cases does not mean that integration is prohibited or not permitted." (*Matter of Balaban* v. *Rubin*, 20 A D 2d 438, 446.) In affirming the order of the lower court, the Court of Appeals said: " The issue, we repeat, is: May (not must) the schools correct racial imbalance? " (14 N Y 2d 193, 199.)

Moreover, it should be noted that no compulsion or deprivation of attendance at a neighborhood school is involved in the Rochester plan. Transfer is provided only for those students whose parents request reassignment. No student is compelled to attend any school other than that within his neighborhood nor is any excluded from his area school. Bearing this fact in mind, the conclusion that the plan is discriminatory to the transferred Negro students loses its validity.

The circumstance that transportation and lunch facilities are provided as part of the transfer program does not in and of itself make the program invalid. Nothing in the Open Enrollment Plan requires that these services be limited exclusively to those being transferred. Whether the operation of these aspects of the plan is arbitrary or capricious is a part of the controversy which has not yet been determined and which is not now before this court.

Finally, the language of *Matter of Strippoli* v. *Bickal* (*supra*, p. 368) is appropriate: " If the complaint of these petitioners

**10**

is that their children must now attend an integrated school, we call attention to *Brown* v. *Board of Educ.* (347 U. S. 483), decided over a decade ago by the United States Supreme Court.''

It is clear that the Open Enrollment Plan adopted by the Board of Education of the City of Rochester does not violate any constitutional right of petitioners, their children or the students who voluntarily transfer. Accordingly, the judgment should be reversed and the matter remitted to Special Term to resolve as an issue of fact the question as to the administrative propriety of the transfer of students from School No. 4 to School No. 40.

WILLIAMS, P. J., BASTOW, HENRY and NOONAN, JJ., concur.

Judgment unanimously reversed on the law, without costs of this appeal to any party and matter remitted to Monroe Special Term for further proceedings in accordance with the opinion.