Per Curiam.

The issue posed by the petition in terms of racial balance, which balance the Commissioner now avers is essential to a sound education, is not reviewable by this court as the following quotations from opinions show. The purpose of the grant of quasi-judicial powers under section 310 of the Education Law is “to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the same as far as practicable and possible from controversies in the courts ” (Bullock v. Cooley, 225 N. Y. 566, 576-577 [1919]). “By our state system of education protected by the Constitution and developed by much study and experience, the commissioner of education is made the practical administrative head of the *266 system, and in Ms exercise of sound wisdom, as we believe, the legislature deemed it best to make him the final authority in passing on many questions bound to arise in the admiMstration of the school system, and has provided an expeditious and simple method by which a disposition of such questions could be reached through appeal to him ” (People ex rel. Board of Educ. of City of N. Y. v. Finley, 211 N. Y. 51, 57 [1914]). “In appraising the judicial nature of the act of the Commissioner of Education, it must be remembered that he combines both judicial and administrative functions. When he decides appeals where he has occasion to construe statutes, he undoubtedly acts in a judicial capacity. But in passing upon the propriety of educational policy by a particular school board or school district, he acts in a broader capacity than the courts, by reviewing at times administrative acts of discretion of which a court would refuse to take cognizance.” (Matter of Craig v. Board of Educ. of City of N. Y., 173 Misc. 969, 977, affd. 262 App. Div. 706 [1941]. See, also, Matter of Ross v. Wilson, 308 N. Y. 605, 617; State Commissioner’s opinion of Feb. 15, 1965 in Matter of Dixon v. Board of Educ. of City School Dist. of City of Buffalo; L. 1812, ch. 242; L. 1854, ch. 97; L. 1864, ch. 555.)
This is merely a reaffirmation of a principle contained in New York law for over 130 years.
In Easton v. Calendar (11 Wend. 91, 93-94 [1833]) the court stated:"The plaintiff below was not without his remedy, 1 R S. 487, § 110, 11; and the amendment of the law, 20th April, 1830, provides that any person conceiving Mm self aggrieved in consequence of any decision made by the trustees of any district in paying any teacher, or concerning any other matter under the present title, (which includes the whole of the school act,) may appeal to the superintendent of common schools, whose decision shall be final. This provision was intended for what it practically is, a cheap and expeditious mode of settling most, if not all of the difficulties and disputes arising in the course of the execution of the law. A common law certiorari would no doubt lie from this court to the trustees, to bring up and correct any erronéous proceeding not concluded by an adjudication of; the superintendent, or in a case where his powers were inadequate to give the relief to which the party was entitled.”
A recent case illustrating the Commissioner’s unusual *267 authority to overturn a local hoard’s orders solely from the standpoint of alleged sound education policy is Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127 [1959]. In that case a decision by the Commissioner that the local board’s policy of requiring teachers who were former communists to identify , colleagues as party members was educationally unsound was not disturbed by this court on the ground that his decision was final. In arriving at this result, the court was fully cognizant of the fact that both the Feinberg Law (Education Law, § 3022) and section 20.1 of the Board of Regents Regulations (8 NYCRR 20.1) directed boards of education to take steps to eliminate subversive elements in their school system. Here the Board of Regents under authority of section 207 of the Education Law has declared racially imbalanced schools to be educationally inadequate. The Commissioner under sections 301 and 305 of the Education Law has implemented this policy by directing local boards to take steps to eliminate racial imbalance. These decisions are final absent a showing of pure arbitrariness.
The Commissioner’s decision in this case rests squarely on his finding of the inadequacy of such schools from the viewpoint of educational soundness. Since this court had decided that the Commissioner, when a similar policy judgment was made, may substitute his judgment for that of the local board even where the action of the local board was not arbitrary (Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127 [1959], supra), the decision of the Commissioner in regard .to racial balance is conclusive.
Disagreement with the sociological, psychological and educational assumptions relied on by the Commissioner cannot be evaluated by this court. Such arguments can only be heard in the Legislature which has endowed the Commissioner with an all but absolute power, or by the Board of Regents, who are elected by the Legislature and make public policy in the field of education.
Since we find that the determination of the Commissioner of Education is not arbitrary or illegal, the order of the Appellate Division must be affirmed.
The order of the Appellate Division should be affirmed, without costs.