Karl P. **OFFERMANN** et al., Plaintiffs,
Earthly J. Gaskin et al., Plaintiff-
Intervenors,

v.

Anthony J. **NITKOWSKI**, as President
and a member of the Board of Educa-
tion of the City of Buffalo, New York,
et al., Defendants,

Yerby Dixon et al., Defendant-Intervenors.

Civ. No. 11546.

United States District Court
W. D. New York.

Dec. 9, 1965.

Parrino & Cooper, Buffalo, N. Y.,
(Peter L. Parrino, Buffalo, N. Y., of
counsel), for plaintiffs.

Willett & Wallace, Buffalo, N. Y.
(Charles D. Wallace, Buffalo, N. Y., of
counsel), for plaintiff-intervenors.

Robert E. Casey, Jr., Corp. Counsel,
City of Buffalo, for Bd. of Education and
Joseph Manch.

Charles A. Brind, Jr., Counsel to Dept.
of Education, Albany, N. Y., for Com'r
of Education and Bd. of Regents.

Herman Schwartz, Buffalo, N. Y., for
defendant-intervenors, Yerby Dixon,
Newton Garber, Blanche Thomas, Erwin
Johnson, Evelyn Perkins and Julia Johns.

Herald P. Fahringer, Buffalo, N. Y.,
for Upstate New York Div., American
Civil Liberties Union, amicus curiae.

William L. Rieth, and Eugene M. Setel,
Buffalo, N. Y., for Conference for Inte-
grated Schools, amici curiae.

HENDERSON, District Judge.

The plaintiffs and intervening plain-
tiffs in this action question the consti-
tutionality of an order of the Commis-
sioner of Education of the State of New
York and of a plan adopted pursuant to
that order. A declaratory judgment and
permanent injunction are sought and
jurisdiction is claimed under Title 28
U.S.C. §§ 1331 and 1343 and Title 42
U.S.C. § 1983. Presently before the
court are plaintiffs' motion to convene
a three judge court pursuant to Title
28 U.S.C. § 2281 and a motion by the
defendants, James E. Allen, Commis-
sioner of Education, and the Board of
Regents to dismiss for lack of jurisdic-
tion over the subject matter and for
failure to state a claim for which relief
can be granted. Two hearings have been
held relative to plaintiffs' motion.

The action of the Commissioner of
Education was prompted by certain par-
ents and natural guardians who became

dissatisfied with the action of the Board of Education of the City of Buffalo in dealing with racial imbalance in the Buffalo schools and related matters, and who appealed that action to the Commissioner of Education as permitted by section 310 of New York's Education Law, McK.Consol.Laws, c. 16. Acting on the appeal on February 15, 1965, the Commissioner entered an interim order directing:

> " * * * that the Board of Education of the City School District of the City of Buffalo prepare, approve and submit to me on or before May 1, 1965 a plan for the progressive elimination of racial imbalance, including the steps to be taken in this direction beginning with the school year 1965–1966."

The setting in which this order was entered is important to an understanding of the issue presented in this case.

Prior to the Commissioner's order and adoption of the resulting plan, the City of Buffalo schools were operated along neighborhood lines without regard to the racial composition of the neighborhood which a given school might be scheduled to serve. Through the years, socio-economic factors had resulted in a concentration of the Negro population of the city which, in turn, resulted in several of the city's schools becoming predominantly attended by Negro pupils.

Such a condition, commonly referred to as *de facto* segregation, was and is common under the neighborhood school systems in effect in many cities throughout the country. However, the social evils inherent in such a condition have long been recognized and to eliminate those evils the Education Department of the State of New York, in 1964, adopted a policy geared to meet and solve that problem.[1]

The Commissioner's order and the plan adopted pursuant to that order obviously are consistent with the aforementioned state policy. The initial phase (represented by the plan under attack) does not wholly abandon the neighborhood concept, but achieves better racial balance primarily through relocation of school boundary lines and restrictions on pupil transfer which otherwise could defeat the plan's purpose.

With this background in mind, the court turns to consideration of plaintiffs' claim and, initially, to mention of the narrowness of that claim.

The plaintiffs do not claim hardship, that better racial balance has not been achieved, or that the plan is not the product of a reasonable, honest and forthright effort by all concerned. Carefully avoiding the bona fides of this step, they challenge only the defendants' right to consider race in making pupil assignments. While the plaintiffs' complaint charges that the plan is based solely on racial considerations, it is quite apparent that such factors as school capacities, the distances children would have to travel to and from school, etc., necessarily were considered. No doubt exists, however, but that the plan was specifically and purposely designed to achieve better racial balance in the Buffalo schools and that consideration of race was absolutely necessary to achieve that end.

In this context the court finds the plaintiffs' claim of violation of their constitutional rights untenable. With its decision in Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Supreme Court recognized the inherent inequality of a segregated school system and declared that state action geared to achieve that end had deprived plaintiffs of equal protection of the laws under the Fourteenth Amendment. While it appears that totally unintended segregation may not be prohibited,[2] it is clear that segregation,

---

1. See: State Education Department "Summary of State Education Department's Position with Respect to the Elimination of De Facto Segregation in the Schools" (March 6, 1964).

2. See Downs v. Board of Education of Kansas City, 336 F.2d 988 (10th Cir. 1964), cert. denied, 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800 (1965).

in part the result of past state action, is not to be tolerated.[3]

The tenor of these and related decisions,[4] in the court's view, clearly indicates that the Fourteenth Amendment, while prohibiting any form of invidious discrimination, does not bar cognizance of race in a proper effort to eliminate racial imbalance in a school system. With respect to the so-called "color-blind" standard advocated by these plaintiffs, the remarks of District Judge Bohanon, in Dowell v. School Board of Oklahoma City Public Schools, 244 F.Supp. 971 (W.D.Okl.1965), are equally appropriate in this case. Speaking of the rights of the defendant members of the School Board, the court, at page 981, states:

"Clearly, defendants may consider race in disestablishing their segregated schools without violating the Fourteenth Amendment's equal protection clause. The admonition of the first Mr. Justice Harlan in his dissenting opinion in Plessy v. Ferguson, 163 U.S. 537, 559, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) that 'Our Constitution is color-blind' was directed against the 'separate but equal' doctrine, and its rejection in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, was an explicit recognition that separate educational facilities are inherently unequal, and did not convert Justice Harlan's metaphor into constitutional dogma barring affirmative action to accomplish the purposes of the Fourteenth Amendment."

On the pleadings, the exhibits annexed thereto, and the representations and statements by counsel for plaintiffs, the court finds no claim presented for which relief can be granted. Since it is clear that no substantial federal question is presented, the court need not decide whether the action would otherwise require the convening of a three judge court. Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Plaintiffs' motion is denied and the defendants' motion granted. So ordered.

---

3. See Taylor v. Board of Ed. of City School Dist. of City of New Rochelle, 294 F.2d 36 (2d Cir. 1961), cert. denied, 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961).

4. See McLaughlin v. State of Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Springfield School Committee v. Barksdale, 348 F.2d 261, 266 (1st Cir. 1965); Balaban v. Rubin, 14 N.Y.2d 193, 250 N.Y.S.2d 281, 199 N.E.2d 375 (1964), cert. denied, 379 U.S. 881, 85 S.Ct. 148, 13 L.Ed.2d 87 (1964); Vetere v. Allen, 15 N.Y.2d 259, 258 N.Y.S.2d 77, 206 N.E.2d 174 (1965), cert. denied, 86 S.Ct. 60 (Oct. 11, 1965); Addabbo v. Donovan, 16 N.Y.2d 619, 261 N.Y.S.2d 68, 209 N.E.2d 112 (1965), cert. denied, 86 S.Ct. 241 (Nov. 8, 1965).