Walter Raymond WANNER, an infant, by
Raymond Wanner, father, and Frances
S. Wanner, mother, and next friend, et
al., Appellees,

v.

COUNTY SCHOOL BOARD OF ARLING-
TON COUNTY, VIRGINIA, Appellant.

No. 10208.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 6, 1965.

Decided Feb. 7, 1966.

Edmund D. Campbell and Peter J. Kos-
tik, Arlington, Va., for appellant.

LeRoy E. Batchelor, Arlington, Va.
(Michael E. McKenzie, Arlington, Va., on
brief), for appellees.

Before HAYNSWORTH, Chief Judge,
and SOBELOFF, BOREMAN and BELL,
Circuit Judges.

SOBELOFF, Circuit Judge:

For the fifth time the public school
problems of Arlington County, Virginia,

are before this court. In the earlier chapters of this protracted litigation, Negro children were seeking decrees ordering the School Board to admit them to formerly white schools or other relief to advance the desegregation of the races in the county's school system. The novel feature of the present appeal is that when the Board acted, as it thought, to comply with earlier orders of this court as well as to improve the educational system of the county, it was, at the instance of white parents, enjoined by the District Court from putting its plans into effect.[1] From this injunction the Board now appeals.

The plan for the desegregation of the county's all-Negro Hoffman-Boston Junior High School, the District Court held, deprives the white plaintiffs of their rights under the Fourteenth Amendment and under the provisions of the Civil Rights Act of 1964. The District Court reasoned that the plan was the product of an "erroneous" belief on the part of the School Board that it was under a court order to close the all-Negro Hoffman-Boston Junior High School; that racial balance was the prime criterion used in redrawing the boundaries and that considerations based on race are constitutionally impermissible; and that there was no evidence to support the School Board's contention that the plan was educationally more desirable than the previous arrangement.

Before proceeding to the merits, it is important to recall that the School Board of Arlington County has since 1956 been under injunctive orders approved by this court, prohibiting racial segregation in the Arlington public schools.[2] In Brooks v. County School Board of Arlington County, 324 F.2d 303 (4th Cir. 1963), this court reversed an order of the District Court dissolving the injunction and ordered its reinstatement. Our opinion specifically noted the claims of the Negro plaintiffs that "the Hoffman-Boston district was originally created for Negroes when the maintenance of the segregated system was the avowed policy and practice" and that "Hoffman-Boston remains as it was contrived, a Negro enclave entirely surrounded by white school zones." This court further had occasion to declare that "[t]he District Court's finding that there is no evidence to sustain the charge that geographical boundaries were established to maintain segregation is clearly erroneous." 324 F.2d at 308.

While it is true, as the District Court has stated, that the *Brooks* decision did not place the School Board under a specific order to close Hoffman-Boston, the opinion made it perfectly clear that this court considered intolerable the continued maintenance of Hoffman-Boston as an

---

1. The School Board adopted its plan on March 25, 1965, after public hearings. Plaintiffs' complaint, filed April 12, 1965, sought both a preliminary and a permanent injunction to prevent the Board from implementing its plan. On April 21, 1965, the District Court held a hearing on the motion for a preliminary injunction and denied the motion. The merits were heard on May 19 and 21, 1965, but no opinion was rendered until August 6, 1965, and no final order was entered until August 23, 1965. The School Board petitioned this court for a stay of the injunctive order, and by assignment of the Chief Judge of the circuit, the writer of this opinion, after taking testimony and hearing argument on August 25, 1965, granted a stay pending appeal. The Arlington school system opened the 1965–1966 school year under the new plan.

2. *Sub nom.* School Board of City of Charlottesville v. Allen, 240 F.2d 59 (4th Cir. 1956), cert. denied, 353 U.S. 910, 77 S.Ct. 667, 1 L.Ed.2d 664 (1957), affirming Thompson v. County School Board of Arlington County, 144 F.Supp. 239 (E.D. Va.1956); Thompson v. County School Board of Arlington County, 252 F.2d 929 (4th Cir.), cert. denied, 356 U.S. 958, 78 S.Ct. 994, 2 L.Ed.2d 1065 (1958), affirming 159 F.Supp. 567 (E.D.Va.1957); Hamm v. County School Board of Arlington County, 263 F.2d 226 and 264 F.2d 945 (4th Cir. 1959), affirming in part and remanding in part Thompson v. County School Board of Arlington County, 166 F.Supp. 529 (E.D.Va.1958); Brooks v. County School Board of Arlington County, 324 F.2d 303 (4th Cir. 1963), reversing Thompson v. County School Board of Arlington County, 204 F.Supp. 620 (E.D.Va.1962).

all-Negro junior high school. Our opinion admonished the School Board that it had "the primary authority and responsibility to bring the school system into complete conformity with the law." 324 F.2d at 308.

Before proposing a new school districting plan, the School Board appointed a Criteria Committee, a panel of nineteen citizens, to render advice respecting school attendance areas. On February 11, 1965, it unanimously reported that

"The present boundaries of the [Hoffman-Boston] district served by this all-Negro junior high school are completely artificial. The district is divided into two entirely separate subdivisions by the Army-Navy Country Club. The Gunston Junior High School district surrounds Hoffman-Boston on three sides."

With the findings of the Criteria Committee and the rulings of this court in mind, the School Board adopted a plan whereby three former junior high school districts (Hoffman-Boston, Thomas Jefferson, and Gunston) have been combined into two new districts (Jefferson and Gunston). The racial composition of each of the two new districts is approximately 75% white pupils and 25% Negro. When the School Board adopted its plan, it had knowledge of the racial imbalance in the student population of the districts involved and was aware that the new plan would result in reducing the imbalance.

The new Jefferson District operates its junior high school classes in two school buildings—the former Hoffman-Boston Junior High building, which houses seventh graders, and the former Thomas Jefferson Junior High building, which houses eighth and ninth graders.

The appellees do not contend, nor did the District Judge find, that the newly-created districts represent artificial boundary lines.[3] Rather, the plan is attacked on the grounds that the School Board "took race into consideration" in redrawing the boundary lines, and that the plaintiffs are denied equal educational opportunities because the newly-created Jefferson District will be maintained not as a single- but as a dual-building district, separating the seventh grade pupils from the eighth and ninth grade pupils.

## I

In ruling that the School Board in the existing circumstances is prohibited from considering race when redrawing school attendance districts, the District Court was clearly in error.

If a school board is constitutionally forbidden to institute a system of racial segregation by the use of artificial boundary lines, it is likewise forbidden to perpetuate a system that has been so instituted. It would be stultifying to hold that a board may not move to undo arrangements artificially contrived to effect or maintain segregation, on the ground that this interference with the status quo would involve "consideration of race." When school authorities, recognizing the historic fact that existing conditions are based on a design to segregate the races, act to undo these illegal conditions—especially conditions that have been judicially condemned—their effort is not to be frustrated on the ground that race is not a permissible consideration. This is not the "consideration of race" which the Constitution discountenances.

Here the Board, abandoning the racially gerrymandered lines of the past, adopted legally permissible geographic lines. This action was within the Board's lawful discretion. It is no ground of objection that other geographic lines might also have been drawn that would be less disruptive of the segregated pattern. An otherwise permissible redistricting plan does not become vulnerable because it attains a measure of racial balance.

There is no legally protected vested interest in segregation. If there were,

---

3. Furthermore, the total amount of busing under the new arrangement is approximately the same as under the old.

then Brown v. Board of Education [4] and the numerous decisions based on that case would be pointless. Courts will not say in one breath that public school systems may not practice segregation, and in the next that they may do nothing to eliminate it.

The District Court and the plaintiffs place undue reliance on Bell v. School City of Gary, Indiana, 324 F.2d 209 (7th Cir. 1963), cert. denied, 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964). That case held that a federal court could not *compel* a school board to realign, in order to effectuate racial balance, school districts whose boundaries were innocently arrived at with no intent to maintain or perpetuate segregation.[5] Some courts have disagreed.[6] However this may be, in the case before us the record establishes beyond dispute that the Hoffman-Boston school district was the product of invidious racial discrimination.

No case was cited to this court, nor has one been found, which has *prohibited* a school board, when drawing or redrawing school attendance lines, from reducing or eliminating segregation, even where segregation was *de facto*, much less when brought about by a deliberate policy of separation of the races.[7] The Arlington County School Board has a more compelling case, for it was dealing not with *de facto* segregation but with the constitutionally forbidden practice of maintaining school attendance areas fixed with an eye to the separation of the races.[8]

Moreover, there is no basis whatsoever for the District Court's assertion that the School Board closed "an existing neighborhood school" in order to create racial balance. Neither Hoffman-Boston, nor Thomas Jefferson, nor Gunston was a truly "neighborhood" junior high school district. Because Thomas Jefferson and Gunston were contiguous to the Hoffman-Boston Negro enclave, the boundary lines of the former two were a creation of the racial gerrymandering of the Hoffman-Boston district and assumed the same artificial character as the Hoffman-Boston boundary lines. Certain white children in the old Gunston and Thomas Jefferson districts passed through sections of the Hoffman-Boston district in going to their respective schools. In drawing new and more natural boundary lines, the Board mitigated the effects of the per-

4. Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

5. That holding was followed in Downs v. Board of Education of Kansas City, 336 F.2d 988 (10th Cir. 1964), cert. denied, 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800 (1965). Cf. Barksdale v. Springfield School Committee, 348 F.2d 261 (1st Cir. 1965), vacating 237 F.Supp. 543 (D. Mass.1965). Plaintiffs' citation of Gilliam v. School Board of City of Hopewell, Virginia, 345 F.2d 325 (4th Cir. 1965), is also misplaced. This court there held that the school board *could not be required* to abandon neighborhood schools and transport pupils from one area to another solely for the purpose of integrating the schools. The Supreme Court vacated the judgment in Gilliam on other grounds. 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (Nov. 15, 1965).

6. Blocker v. Board of Education of Manhasset, New York, 226 F.Supp. 208 (E. D.N.Y.1964); Branche v. Board of Education of Town of Hempstead, New York, 204 F.Supp. 150 (E.D.N.Y.1962); Jack-

son v. Pasadena City School Dist., 59 Cal.2d 876, 31 Cal.Rptr. 606, 382 P.2d 878 (1963). See Judge J. Skelly Wright, "Public School Desegregation: Legal Remedies for De Facto Segregation," 40 N.Y.U.L.Rev. 285 (1965).

7. Cases in which courts have refused to enjoin a school board from implementing a plan designed to eliminate *de facto* segregation are Fuller v. Volk, 230 F.Supp. 25 (D.N.J.1964); Morean v. Board of Education of Town of Montclair, 42 N.J. 237, 200 A.2d 97 (1964); Addabbo v. Donovan, 16 N.Y.2d 619, 261 N.Y.S.2d 68, 209 N.E.2d 112 (1965); Vetere v. Allen, 15 N.Y.2d 259, 258 N.Y.S.2d 77, 206 N.E.2d 174 (1965); Balaban v. Rubin, 14 N.Y.2d 193, 250 N.Y.S.2d 281, 199 N.E.2d 375, cert. denied, 379 U.S. 881, 85 S.Ct. 148, 13 L.Ed.2d 87 (1964). See Fiss, "Racial Imbalance in the Public Schools: The Constitutional Concepts," 78 Harv.L.Rev. 564, 574–583 (1965).

8. See Dowell v. School Board of Oklahoma City Public Schools, 244 F.Supp. 971 (W. D.Okl.1965).

sistent policy of segregation. In so doing, it has not exceeded its powers or violated its duty or the rights of the complainants.

## II

■ The District Court found that there is no evidence to support the School Board's determination that the plan affords the affected pupils educational opportunities greater than those available to them under the old system. It would be a dispositive answer to say that, where a school board is attempting in good faith to eliminate or reduce segregation, courts are not commissioned to enter into a debate with school authorities as to which redistricting plan among several is preferable from an educational standpoint.

■ Moreover, we are of the view that the District Court's factual finding is clearly erroneous. There is no support in the record for the complainants' contention, accepted by the District Court, that the dual-building Jefferson District impairs the educational opportunities of the Jefferson Junior High School students. To the contrary, all the evidence is that the new arrangement, despite the dual-building feature, is educationally more advantageous.

The Criteria Committee advised the School Board that current thinking among educators is that junior high schools afford optimum educational opportunities when the size of the student body allows "two, three or more sections per elective subject \* \* \* in order to provide adequate staffing and groupings according to the needs and abilities of all the children." The Committee reported that in Arlington the small junior high schools

"have been recognized as less effective and less efficient because of such problems as too few children for adequate groupings, greater daily demands on teachers who must plan for more than one grade level or subject offering, and more difficulty in scheduling classes and in assigning special teachers and librarians to such schools on a full time basis."
The Committee's unanimous report supported the School Board's view that a junior high school provides optimum educational advantages when the student body ranges from 950 to 1200 pupils. The Hoffman-Boston school building has a capacity of 610, and the Thomas Jefferson building has a capacity of 725. Gunston's capacity is 1050.

After holding public hearings on March 11 and March 18, 1965, and considering the opinion of professional educators, the School Board rendered its final decision that the educational interests of the children involved would be best served by combining the three old districts into two new ones. In a letter to the parents, dated March 16, 1965, entitled "Information Relating to the New Junior High School District," School Superintendent Ray E. Reid pointed out that neither the Hoffman-Boston nor the Thomas Jefferson building was large enough to accommodate a student body of the desirable size; that by combining the two schools certain courses could be made available which were not formerly offered in either of these districts;[9] that "in some subjects, the larger size school makes it possible for grouping of students with similar abilities and similar learning problems."

In 1964, before the adoption of the School Board's plan, four of the county's

9. In a letter to the parents, dated March 16, 1965, and at the District Court hearing Superintendent Reid stated that the following courses were available at Gunston but not at Thomas Jefferson or Hoffman-Boston: French 2J, Spanish 2J, Latin I-9, Intermediate Strings, Personal Typing. The following courses were available at Gunston but not at Hoffman-Boston: Reading 9, Journalism, French I-S, Spanish I-J, Spanish I-E, Spanish 2-E, Geometry, Earth and Space Science, World History and Geography, Boys Chorus, Girls Chorus 8, Girls Chorus 9, Beginning Strings, Orchestra, Radio and Electronics. Superintendent Reid concluded that the size of the new Jefferson school should make these courses available.

seven junior high schools (Gunston, Kenmore, Stratford, and Williamsburg) were within, or very near to the optimum size of 950 to 1200 students. Of the remaining three (Hoffman-Boston, Thomas Jefferson, and Swanson) the plan brings two (Hoffman-Boston and Thomas Jefferson) within the Criteria Committee's recommendations and the Board's policy. The remaining district, Swanson, had an enrollment in 1964 of 732 students in a building with a capacity for 700. Thus, the effect of the adopted plan is that all but one of the junior high schools in Arlington County now conform to the minimum educational standards established by the School Board.

Superintendent Ray E. Reid testified that he would prefer that a new junior high school building be built to accommodate all the students in the newly formed Jefferson District, and that he was prepared to recommend a bond issue for this purpose to the voters of Arlington.[10] However, Mr. Reid went further, and testified that even if the bond issue were defeated by the voters, he would still recommend and support the enlarged Jefferson District with its dual-building arrangement as educationally more desirable than the former three-district system. The educational deficiencies under the old system, Mr. Reid added, were "significant," and the educational loss to the children from its continued use would be "irreparable."

Plaintiffs argue that if the Board in redistricting Hoffman-Boston, Thomas Jefferson, and Gunston were sincerely motivated in part by educational criteria, it would have rearranged the Swanson District also. The Swanson District, however, was not shown to be a product of racial segregation, and the compelling circumstances that led the Board to re-arrange Hoffman-Boston and its contiguous districts did not obtain with respect to Swanson. If the Board had not been under a duty to realign the Hoffman-Boston, Thomas Jefferson, and Gunston Districts, perhaps it would not have moved at this time to change the pre-existing arrangement. But it *was* under a duty to rearrange the gerrymandered districts and did so in such a way as to achieve what it considered optimum educational advantages under all the circumstances. That the Board did not deem it feasible to go further and realign the Swanson District at this time does not cast doubt upon the testimony of the School Board members and the Superintendent that in their deliberate judgment the manner in which the gerrymandered districts were realigned is educationally advantageous.

The fact that the plaintiffs would have preferred a plan which retained the three-district system, concededly with rearranged boundary lines, provides no valid constitutional ground for upsetting the School Board's conclusion that the two-district system is educationally more desirable. There has been no showing that the School Board's plan has unconstitutionally deprived any of the plaintiffs of equal educational opportunities because of their race.

This record plainly shows that the School Board has not been arbitrary, that it has in fact proceeded fairly and with integrity. The District Court exceeded its authority when it undertook to override the School Board's action taken with the genuine purpose of complying with the law of the land and enhancing the county's educational system. The order of the District Court is

Reversed.

10. The bond issue was in fact proposed by the School Board on September 30, 1965, but was defeated by the voters on November 2, 1965. A bond issue for the expansion of the Swanson Junior High School was also proposed, and was approved by the voters.