**Karl P. OFFERMANN and Mary E. Offermann, Individually and as Parents and Next Friends of Children Eligible to Attend the Public Schools of the City of Buffalo, New York, and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,**

Earthly J. Gaskin, Geraldine Gaskin, Robert E. Jackson and Anna B. Jackson, Plaintiff-Intervenors,

v.

**Anthony J. NITKOWSKI, as president and a member of the Board of Education of the City of Buffalo, New York, Peter Gust Economou, Lydia T. Wright, Alfreda W. Slominski, Carmelo A. Parlato, Bernard S. Rosenblat and George F. Goodyear, as members of the Board of Education of the City of Buffalo, New York, Joseph Manch, as Superintendent of Schools of the City of Buffalo, New York, James E. Allen, Jr., as Commissioner of Education of the State of New York, and The Board of Regents of the University of the State of New York, Defendants-Appellees,**

Yerby Dixon, Newton Garber, Blanche Thomas, Erwin Johnson, Evelyn Perkins and Julia Johns, Defendant-Intervenors-Appellees.

**No. 411, Docket 30337.**

United States Court of Appeals Second Circuit.

Argued April 13, 1967.

Decided May 19, 1967.

Peter L. Parrino of Parrino & Cooper, Buffalo, N. Y., for plaintiffs-appellants.

John J. Naples, Asst. Corporation Counsel, Buffalo, N. Y. (Anthony Manguso, Corporation Counsel, on the brief), for Buffalo Board of Education and Joseph Manch, appellees.

John P. Jehu, Albany, N. Y. (Charles A. Brind, Jr., Albany, N. Y., on the brief), for James E. Allen, Jr., and Board of Regents, appellees.

Maria L. Marcus, New York City (Herman Schwartz, Buffalo, N. Y., Robert L. Carter and Joan Franklin, New

York City, on the brief), for defendants-intervenors-appellees.

Before MOORE, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal by a group of parents in Buffalo, New York, from an order of the United States District Court for the Western District of New York, John O. Henderson, Judge, which refused to convene a three-judge court sought under 28 U.S.C. §§ 2281, 2284[1] and dismissed their suit against the Buffalo Superintendent of Schools and Board of Education, the Commissioner of Education of the State of New York and the Board of Regents of the University of the State of New York. The plaintiffs are white, the intervening plaintiffs colored. We find that the action was properly dismissed, that the question raised was insubstantial, and affirm the dismissal of the action and denial of the application to convene a statutory three-judge court.

The gravamen of appellants' complaint is that appellees' plan to correct the *de facto* racial imbalance in the Buffalo school system is unconstitutional because it is based on proscribed racial classifications, that is, that changes in school district boundaries and exceptions to the requirement that children attend neighborhood schools were based on race.

In Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the Court struck down all state action which permitted or required segregation of the races in public schools and subsequently ruled that desegregation proceed "with all deliberate speed." 349 U.S. 294, 301, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). In carrying out the Court's mandate, states necessarily based their desegregation plans on racial classification and the courts have uniformly held such classifications constitutional. See, e. g., Wanner v. County School Board, 357 F.2d 452, 455 (4th Cir. 1966); Dowell v. School Board, 244 F.Supp. 971, 981 (W.D.Okl.1965). Springfield School Committee v. Barksdale, 348 F.2d 261, 266 (1st Cir. 1965): "It has been suggested that classification by race is unlawful regardless of the worthiness of the objective. We do not agree. The defendants' proposed action does not concern race except insofar as race correlates with proven deprivation of educational opportunity. This evil satisfies whatever 'heavier burden of justification' there may be. Cf. McLaughlin v.

[1]. § 2281. Injunction against enforcement of State statute; three-judge court required

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

§ 2284. Three-judge district court; composition; procedure

In any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:

(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member of such court. On the filing of the application, he shall immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding.

* * * * *

(5) Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. A single judge shall not appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing. * * *

State of Florida, 1964, 379 U.S. 184, 194, 85 S.Ct. 283, 13 L.Ed.2d 222."

■ Although there may be some dissent, see, e. g., Blocker v. Board of Education, 226 F.Supp. 208 (E.D.N.Y.1964), courts generally agree that communities have no constitutional duty to undo bona fide *de facto* segregation. Deal v. Cincinnati Board of Education, 369 F.2d 55 (6th Cir. 1966); Downs v. Board of Education, 336 F.2d 988 (10th Cir. 1964), cert. denied 380 U.S. 914, 85 S.Ct. 898, 13 L.Ed.2d 800 (1965); Bell v. School City of Gary, 324 F.2d 209 (7th Cir. 1963), cert. denied 377 U.S. 924, 84 S. Ct. 1223, 12 L.Ed.2d 216 (1964). See also, Springfield School Committee v. Barksdale, supra. The line between proscribed *de jure* and permitted *de facto* segregation has been described by this court as whether "race was made the basis for school districting, with the purpose and effect of producing a substantially segregated school." Taylor v. Board of Education, 294 F.2d 36, 39 (2d Cir.), cert. denied 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961).

■ That there may be no constitutional duty to act to undo *de facto* segregation, however, does not mean that such action is unconstitutional. Since Brown is the law, some attention to color count is necessary to see that it is not violated, for it affirmatively requires admission to public schools on a *racially* non-dis-

criminating basis. What is prohibited is use of race as a basis for unequal treatment.[2] Perhaps even districting solely on the basis of nonsegregation would be sustainable. Appellants alleged that was done here, but the copy of the plan and other documents submitted by appellants themselves demonstrate that other proper factors were in fact considered. The plan, therefore, does not violate any constitutional right of appellants.

■ The next question, however, is whether, even though Judge Henderson's ultimate answer was correct, the question he had to answer was insubstantial; so that a three-judge court need not be convened. Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). While the question may not be free from the slightest doubt, we do not find that such doubt as may exist can be said to be of such substance as to call for the use of the cumbersome three-judge machinery of 28 U.S.C. § 2281 for its determination.

Consideration of race is necessary to carry out the mandate in *Brown,* and has been used, as noted, in cases following *Brown.* Where its use is to insure against, rather than to promote deprivation of equal educational opportunity, we cannot conceive that our courts would find that the state denied equal protection to either race by requiring its school boards to act with awareness of the

2. See Fiss, Racial Imbalance in Schools, 78 Harv.L.Rev. 564, 617:

"Government is responsible for the creation and maintenance of racially imbalanced schools. A school board is constitutionally permitted to undertake measures specifically designed to eliminate this imbalance, even though considerations of race are thereby incorporated within a governmental scheme. The equal protection clause, requiring equality of educational opportunity, may in some instances be violated by the maintenance of racially imbalanced schools. The reach of these propositions cannot be ignored: they provide the framework for constitutionally permitting and sometimes requiring radical reform of the *status quo."*

Wanner v. County School Board, 357 F. 2d 452, 454 (4th Cir. 1966): "If a school

board is constitutionally forbidden to institute a system of racial segregation by the use of artificial boundary lines, it is likewise forbidden to perpetuate a system that has been so instituted. It would be stultifying to hold that a board may not move to undo arrangements artificially contrived to effect or maintain segregation, on the ground that this interference with the status quo would involve 'consideration of race.' When school authorities, recognizing the historic fact that existing conditions are based on a design to segregate the races, act to undo these illegal conditions—especially conditions that have been judicially condemned—their effort is not to be frustrated on the ground that race is not a permissible consideration. This is not the 'consideration of race' which the Constitution discountenances."

problem. Whether § 2281 would require reversal, where the single district judge upheld the state action, and three circuit judges agreed with this result, even though the question were thought substantial, we need not determine (see Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 114 (2d Cir. 1966)). In such cases the purposes of the statute are not frustrated, and judicial economy is served by review in the ordinary course, rather than retrial before a three-judge district court and direct appeal. See Note on Section 2281 Courts, 77 Harv.L.Rev. 299, 308 (1963). This is particularly so when the three-judge court is not sought by the state or state agency, although the genesis of the requirement was to diminish any affront to state sensibilities by requiring a decision by three federal judges rather than one. Here we do not reach this question since we agree with Judge Henderson that the issue is not substantial, and *Poresky* governs.

Judgment dismissing action affirmed.