DR. BARBARA THOMPSON, State Superintendent Department of PublicInstruction
You ask my opinion on the following questions:
 "(1) Is there authority under the constitution and laws of Wisconsin and of the United States for the state superintendent of public instruction to determine whether a school is desegregated?
 "(2) May the state superintendent order compliance with desegregation procedures and take legal action to secure compliance therewith?
 "(3) Is the state superintendent authorized by Wisconsin statutes to promulgate `Guidelines For Equal Educational Opportunity' as administrative rules under Chapter 227, Stats., as amended by Chapter 162, Laws of Wisconsin, 1973?
 "(4) Would your answers to questions 1, 2 and 3 above be changed considering the new desegregation procedures contained in Public Law 93-380 signed August 21, 1974, Copy of which is attached?"
You indicate that these questions arise because, among other things, the Department of Public Instruction published at your predecessor's request Bulletin No. 3356 entitled "Guidelines For Equal Educational Opportunity." The bulletin sets out:
 ". . . methods of identifying segregative procedures . . . along with suggestions for elimination and prevention of segregation. There is also information required to be submitted by the district concerned with identifying segregative procedures and corrective action taken and future action to be taken. The procedures outlined on page 5 of the `Guidelines' require the state superintendent to determine whether the district is in compliance with the desegregation guidelines and to notify any district in noncompliance with such guidelines to prepare a plan of compliance therewith."
You further indicate that the "Guidelines" provide: *Page 284 
 "If there is failure to comply with the suggested guidelines on page 6 . . . the state superintendent will:
 "(1) Notify in writing the United States Department of Health, Education, and Welfare that, effective immediately and continuing until further notification to the contrary, said school district is in a state of noncompliance.
 "(2) Notify the Wisconsin State Attorney General of the affected school district's failure or refusal to comply with these guidelines and request the Attorney General to take legal action to secure compliance."
In order to provide meaningful answers to your questions, it is appropriate to first discuss briefly the law relating to equal educational opportunity.
In Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686,98 L.Ed. 873 (1954) (Brown I), the U.S. Supreme Court held that segregation of children in public schools on the basis of race deprives minority group children of equal educational opportunities and therefore denies them equal protection of the laws under the Fourteenth Amendment. This case clearly declaresde jure segregation, i.e., segregation initiated and perpetuated by a state agency, unconstitutional.
In Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753,99 L.Ed. 1083 (1955) (Brown II), and in Green v. County SchoolBoard, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), the U.S. Supreme Court placed the burden directly on the school board to act affirmatively to eliminate segregation. In Green, which involved a southern rural school district, the court held that a plan of desegregation which merely gave the pupils a choice of schools was insufficient to eliminate a de jure dual school system. In that case the court at 391 U.S. 437-438, citing Brown
II, wrote that school boards operating state compelled dual systems are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch . . . ." This affirmative obligation of local school boards was affirmed in Swann v. Charlotte-Mecklenburg Board ofEducation, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), a case involving an urban school district. Your attention is also directed to the recent *Page 285 
order of the Federal District Court for the Eastern District of Wisconsin in the Milwaukee School District segregation case.Kevin Armstrong, et al. v. Donald J. O'Connell, et al.,408 F. Supp. 765, 825 (1976). The obligation of state school officials to eliminate school desegregation is less well recognized. Courts have uniformly relied on local, as opposed to state, efforts to desegregate, except where state authorities had assumed virtually total control of statewide school operations, see Lee v. MaconCo. Board of Education, 267 F. Supp. 485 (M.D. Ala. 1967), or where an effective remedy for local segregative practices absolutely required the participation of state officials, seeMorgan v. Hennigan, 397 F. Supp. 410 (Mass. 1974), the Boston school desegregation case. Voluntary action by state school officials to remedy segregation in the public schools has been upheld where statutory authorization existed for them to take such steps. See, e.g., Vetere v. Allen, 15 N.Y.2d 259, 258 N.Y. So.2d 77, 206 N.E.2d 174, cert. denied, 382 U.S. 825 (1965);Booker v. Board of Education, 45 N.J. 161, 212 A.2d 1 (1965).
Since the question appears to turn on either the powers of the state superintendent or direct involvement in fostering segregation, it is necessary to examine the state Constitution and state statutes governing to see whether a duty is imposed or a right is conferred on the superintendent to eliminate segregation in the local school districts.
There is no specific statutory authority granting the state superintendent authority to investigate, make findings of law or order changes in allegedly segregated school districts. It is therefore necessary to determine whether the more general grants of power may be interpreted as permitting the state superintendent to become involved in altering the practices of segregated school districts.
Wis. Const. art. X, sec. 9, provides in part:
 "The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law . . . ."
37 OAG 347 (1948), concluded that Wis. Const. art. X, sec. 1, gave the state superintendent supervisory authority over all institutions of public instruction but only to the extent authorized by the legislature. *Page 286 
Before analyzing specific legislative grants of power to the superintendent and answering your specific questions, it would be helpful to review the historical development of legislation regarding the superintendent's powers.
 "It is a well established practice in American legal processes to consider relevant information about the historical background of the enactment of a statute in the course of making decisions about how it is to be construed and applied. . . ." 2A Sutherland Statutory Construction, 4th Ed., sec. 48.03, p. 191.
Wisconsin is the only state in the Union that does not have a state school board.[1] The Wisconsin legislature in 1849, after the adoption of the Constitution, initiated a policy of local control of common school districts. While it recognized the principle of state control in education, it nonetheless delegated large powers to subordinate units, particularly the local school district.
 "Thus the state helped in establishing in the public mind the idea of popular participation in the control of the common schools in both maintenance and government . . . . The laws made each district supreme, with authority to do as much or as little as it pleased . . . ." Patzer, Public Education in Wisconsin, pp. 38-39.
As might be expected, the powers and duties of the state superintendent, as prescribed in Revised Statutes of Wisconsin, 1849, were largely inspectional and clerical.[2] In 1902, Wis. Const. art. X, sec. 1, was amended to allow the legislature to provide by law for powers and duties of the state superintendent. In 1903, the legislature enacted ch. 37 relating to the duties of the state superintendent. Section 2 of that chapter provided in part:
 "He shall have general supervision over the common schools of the state, and it shall be his duty:
 "School work. 1. To ascertain, so far as practicable, the conditions of the public schools of the state; to stimulate interest in education; to spread as widely as possible, through public addresses, bulletins, and by conferences with school officers, teachers and parents, a knowledge of methods which *Page 287 
may be employed to introduce desirable improvements in the organization, government and instruction of the schools:"
These general grants of power remain substantially the same today (see sec. 115.28 (1), (3)). The policy in Wisconsin of local school district control has continued with few notable exceptions to the present time. (See sec. 121.02 and sec. 121.08, Stats.) The legislative scheme with respect to the office of state superintendent has been to grant general supervisory powers and to specify related powers and duties as political and social exigencies dictate. The general powers can be construed only as being equal or inferior in rank to those enumerated powers (2A Sutherland Statutory Construction, 4th Ed., p. 112).
In my opinion the state superintendent has not been given the express or implied authority to determine whether a school is segregated, order compliance with desegregation procedures, take legal action to secure compliance therewith, or promulgate administrative rules relating thereto. This answers your first three questions.
The answer to your fourth question is also "no." Public Law93-380, the Educational Amendments of 1974, need be considered only when an affirmative plan of desegregation is being proposed. This statute does not direct or authorize any particular party in state government to initially determine that segregation exists.
Although your formal powers in this area are presently limited, it is my opinion that your power to "ascertain the condition of the public schools" and to "spread as widely as possible a knowledge of the means and methods which may be employed to improve schools," sec. 115.28 (1), Stats., permits you, for example, to ascertain the student population by race of each public school in each school district in the state and to include the results of such an investigation in your report to the governor and the legislature.
It is also my opinion that you are free to suggest solutions to problems involving segregated schools and issue guidelines and bulletins encouraging a realistic approach to the problem. These guidelines would not be binding on the schools and would not have the effect of administrative rules because no statute authorizes you to promulgate such guidelines as rules under ch. 227. *Page 288 
You point out that Bulletin NO. 3356 provides that upon failure of a school district to comply with the guidelines therein, the state superintendent shall report such noncompliance to the Department of Health, Education and Welfare and that the superintendent shall ask the Wisconsin Attorney General to take legal steps to secure compliance. Again you are advised that while you may gather and report facts, you do not have the authority to determine that a school district is unlawfully segregated. Since the guidelines do not have the force and effect of law, the Attorney General has no power to enforce them.
BCL:JWC
[1] State Education, Structure and Organization, HEW Office of Education, 1964.
[2] Revised Statutes of Wisconsin 1849, ch. 9, secs. 44-46.