Gertrude P. FULLER, Richard L. Grubman, Thomas F. Cacciola and Josephine Cacciola, His Wife, and Others to Be Named, Plaintiffs-Appellants, in No. 15043

and

Jerry Volpe et al., Intervening-Plaintiffs-Appellants, in No. 15044

v.

Austin A. VOLK et al., Defendants-Appellees, Frederick M. Raubinger, Commissioner of Education of the State of New Jersey, Kenneth Ancrum, Deborah Spruill, et al., Intervening-Defendants-Appellees.

Nos. 15043, 15044.

United States Court of Appeals Third Circuit.

Argued March 5, 1965.

Reargued June 2, 1965.

Decided Sept. 30, 1965.

324

James T. Murphy, Vorsanger & Murphy, Englewood, N. J., for appellant Fuller et al.

James A. Major, Hackensack, N. J. (Major & Major, Hackensack, N. J., on the brief), for appellant Volpe et al.

Charles Rodgers, John J. Breslin, Jr., Hackensack, N. J. (Breslin & Breslin, Hackensack, N. J., on the brief), for Board of School Estimates of Englewood.

Sidney Dincin, Englewood, N. J., for Board of Education of City of Englewood.

Morton Stavis, Newark, N. J., for Deborah Spruill.

Robert L. Carter, New York City (Barbara A. Morris, New York City, Herbert H. Tate, Newark, N. J., on the brief), for Ancrum et al.

Arthur J. Sills, Atty. Gen. of New Jersey, Trenton, N. J., Howard H. Kestin, Deputy Atty. Gen., of counsel and on the brief, for Frederick M. Raubinger, etc.

Before BIGGS, Chief Judge, and FORMAN and FREEDMAN, Circuit Judges.

BIGGS, Chief Judge.

This civil action attacks the constitutionality of a public school districting plan in the City of Englewood, New Jersey, on the ground that the plan promulgated by the defendants by which racial imbalance in the school system was substantially reduced denies to the plaintiffs the equal protection of the laws guaranteed to them by the Fourteenth Amendment of the Constitution.[1] The plaintiffs claim that the plan of integration is unconstitutional as being based on race and that the plan as formulated is unconstitutional because it gave the parents of Negro children in the Lincoln School the right to vote the plan into existence.

The plaintiffs in this present action consist of two groups of plaintiffs: The original plaintiffs, hereinafter referred to as the Fullers,[2] and the intervening

1. Cf. Morean v. Board of Education, 42 N.J. 237, 200 A.2d 97 (1964); Balaban v. Rubin, 14 N.Y.2d 193, 250 N.Y.S.2d 281, 199 N.E.2d 375, cert. denied, 379 U.S. 881, 85 S.Ct. 148, 13 L.Ed.2d 87 (1964); Note, 19 Rutgers L.Rev. 558 (1965).

2. The caption of the original complaint, in addition to listing Gertrude P. Fuller as a party-plaintiff, sets out as additional parties-plaintiffs "Richard L. Grubman, Thomas F. Cacciola and Josephine Cacciola, his wife, and others to be named."

plaintiffs, hereinafter referred to as the Volpes.[3] The defendants are the members of the Board of Education of the City of Englewood; the City of Englewood; Commissioner Raubinger, the Commissioner of Education of the State of New Jersey, and some thirty-eight minor children attending the public schools in Englewood, who, by their parents, were permitted to intervene as parties-defendants in this litigation.

Prior to the commencement of the September 1963 school term, the Englewood school system consisted of a central high school, grades 10 through 12; a central junior high school, grades 7 through 9 and a system of five elementary schools, grades 1 through 6.[4] These elementary schools were operated under the "neighborhood" school plan, whereby students attended elementary schools located in their own neighborhoods. Under this plan, severe racial imbalance existed in the elementary schools as a result of existing housing patterns in the community. As of September 1962 enrollment and racial composition in the elementary schools were as follows:

| School | Enrollment | % White | % Negro |
|--------|-----------|---------|---------|
| Cleveland | 477 | 99.6 | .4 |
| Liberty | 418 | 38.0 | 62.0 |
| Lincoln | 505 | 2.0 | 98.0 |
| Quarles | 343 | 96.8 | 3.2 |
| Roosevelt | 345 | 85.5 | 14.5 |

The intervening defendants in the instant case, the Spruills and Ancrums, petitioned Commissioner Raubinger, charging the Englewood Board of Education "with the maintenance of racially segregated public schools and with refusal to implement plans to eliminate patterns of racial segregation alleged to exist in the public schools."[5] The Volpes cross-petitioned the Englewood Board of Education, protesting any departure from the status quo. After consolidation by the Commissioner of the Spruill and Ancrum petitions, the Volpes were permitted to intervene in the proceeding. The Commissioner found that the existing racial imbalance was not the product of deliberate or intentional conduct on the part of the Englewood Board of Education, but rather that it was the result of "patterns of housing and the operation of other socio-economic forces" causing "concentration of pupils of one race" in the Lincoln School district.[6] Commissioner Raubinger held that "compulsory attendance at an all Negro School, such as the Lincoln School, at least where appropriate means can be found to avoid it, constitutes a denial of educational opportunity under New Jersey law which the school district is required to correct."[7] The Commissioner ordered the

3. The intervenors-plaintiffs, in accordance with Rule 24(c), Fed.R.Civ.Proc., 28 U.S.C., filed a pleading in the court below. This pleading, captioned "Intervening Plaintiffs Complaint," sets out as intervenors in addition to Jerry and Katherine Volpe, "Louis Pugach and Beatrice Pugach, his wife, Alan Lasser and Judith Lasser, his wife, Ottilio D'Allesio and Marie D'Allesio, his wife, Sol Handler and Lillian Handler, his wife, Eugene F. Clements and Marjorie Clements, his wife, Edward Robbins and Gloria Robbins, his wife, Lloyd Pollard and Blanche Pollard, his wife."

4. The Englewood Board of Education also operated a system of kindergartens. The kindergartens are unaffected by the districting plan here under attack and no issue has been presented to this court or the court below concerning them.

5. Opinion of the Commissioner of Education, Spruill v. Board of Education of the City of Englewood, p. 2 (July 1, 1963).

6. Id. at p. 7.

7. Id. at p. 8.

Englewood Board of Education to formulate a plan or plans to reduce the extreme concentration of Negroes in the Lincoln School and to submit the plan or plans to the Commissioner for approval before August 1, 1963 and to put the plan, as approved, into effect at the commencement of the 1963–64 school term.

In accordance with Commissioner Raubinger's ruling, the Englewood Board of Education promulgated a plan which provided for the establishment of a central sixth-grade school at the former Junior High School building at 11 Engle Street (Engle Street School). The plan also provided for the transfer of all students at the Lincoln School, grades one through five, to the Cleveland, Quarles or Roosevelt schools, taking into consideration such factors as the distance to be traveled and distribution of class loads. No provision was made for either transfer into or out of the Liberty School. The plan stated that those children in Lincoln School who did not wish to transfer should have the opportunity to remain at Lincoln School "provided that it is administratively and educationally practicable to do so.", but that "as a prerequisite to the establishment of the city-wide sixth-grade school * * * either of the following two conditions must occur: 1. 125 or more present students of Lincoln School must NOT elect to remain for the 1963–64 term at Lincoln School or 2. The number of transfers from Lincoln will result in class loads in Quarles, Cleveland, or Roosevelt Schools which, in the opinion of the Board of Education, are educationally undesirable."

In order to implement the plan, questionnaires were sent to parents of children in grades 1 through 5 in the Lincoln School, to determine whether there were enough interested pupils to put the plan into effect. As of August 19, 1963, there were 242 acceptances of assignments out of the Lincoln School and 21 "votes" to remain at the Lincoln School. Accordingly, the Board of Education proceeded with its implementation plans. The Board of School Estimate certified $53,000 for the implementation of the plan which, when added to $50,000 already available to the Board of Education, made a fund of $103,000 available for the implementation of the plan. The plan included renovation of the Engle Street School, the purchase of equipment and moving administrative offices from the Engle Street School to the Lincoln School.

The school term opened on September 4, 1963, but at that time the Engle Street School was not yet ready for use. Therefore, only 125 pupils, grades one through five, were assigned out of the Lincoln School into the Cleveland, Roosevelt and Quarles Schools. The Engle Street School was ready for occupancy and the city-wide sixth grade plan went into effect on October 28. Since that time, all children in grades one through five in the Lincoln School were transferred or sent to the Cleveland, Roosevelt and Quarles Schools and all children in the sixth grade have been attending the city-wide sixth grade school, the Engle Street School. The enrollment and racial composition of the elementary schools as of November 12, 1963, under the plan of integration, were as follows:

| Schools and Grades | Number of Pupils | % White | % Negro |
|---|---|---|---|
| Engle Street (6) | 290 | 58.3 | 41.7 |
| Cleveland (1–5) | 547 | 66.3 | 33.7 |
| Liberty (1–5) | 283 | 39.0 | 61.0 |
| Roosevelt (1–5) | 310 | 65.8 | 34.2 |
| Quarles (1–5) | 301 | 81.4 | 18.6 |

The plaintiffs moved for summary judgment, Rule 56, Fed.R.Civ.Proc., 28 U.S.C. After argument on the motion, the court below entered judgment for the defendants, holding that the plaintiffs failed to show a denial of any constitutional right. Fuller v. Volk, 230 F.Supp. 25 (D.N.J. 1964). The plaintiffs have appealed from this judgment. But before this court can review the judgment of the court below on the merits, we must be certain that we have jurisdiction of the cause and that the court below properly acquired jurisdiction in the first instance.

▮ The original plaintiffs, the Fullers, allege that they have standing to sue to enjoin the expenditure of public funds for an unconstitutional purpose because they are taxpayers in the City of Englewood and the State of New Jersey. There is no longer any doubt that a local taxpayer can invoke federal jurisdiction to attack the constitutionality of state or local expenditures. Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952); Everson v. Board of Education, 330 U.S. 1, 67 S. Ct. 504, 91 L.Ed. 711 (1947); see also Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Zorach v. Clauson, 343 U.S. 306, at 390, n. 4, 72 S.Ct. 679, 96 L.Ed. 954 (1952). However, in order for the taxpayer to have standing, he must show that his position as a taxpayer is in some way affected and, in short, that his is a good-faith pocketbook action. Doremus v. Board of Education, supra. Therefore, the taxpayer must be shown to be suing to prevent a misuse of public funds for this is the only interest which a federal court can protect in a taxpayer's suit. Ibid.; see Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv.L.Rev. 1265, 1307 (1961); cf. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

▮ The original plaintiffs, the Fullers, must bring their case within the ambit of federal question jurisdictional provisions, 28 U.S.C. § 1331, in order that this court and the court below may have jurisdiction. Section 1331(a) grants jurisdiction to the district courts in all civil actions arising under "the Constitution, laws, or treaties of the United States" in which "the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs." If jurisdiction would lie under the civil rights provision of the Judicial Code, 28 U.S.C. § 1343, there would be no issue of jurisdictional amount. Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); see Basista v. Weir, 340 F.2d 74 (3 Cir. 1965). However, the Fullers do not sue to redress a deprivation of their civil liberties but rather to enjoin an allegedly unconstitutional use of funds. Have the Fullers an action in which the amount in controversy exceeds $10,000? Unless they can aggregate their claims and the claims of all other members of the class on whose behalf they sue the court below lacked jurisdiction, since no single plaintiff can establish the requisite amount.

▮ It is well-settled law that only in a true class action may the claims of each member of the class be aggregated in order to obtain the requisite jurisdictional amount in controversy. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871 (1923); Wheless v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L.Ed. 583 (1901); Koster v. Turchi, 173 F.2d 605 (3 Cir. 1949); Black & Yates v. Mahogany Ass'n, 129 F.2d 227, 232, 236 (3 Cir.), cert. denied, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942); Knapp v. Bankers Securities Corp., 17 F.R.D. 245 (E.D.Pa.1954), aff'd, 230 F. 2d 717 (3 Cir. 1956); Giesecke v. Denver Tramway Corp., 81 F.Supp. 957 (D.Del. 1949); Jones v. Mutual Fidelity Co., 123 F. 506 (C.C.D.Del. 1903). The question, therefore, is whether a taxpayer's suit

is one in which the claims of the class may be aggregated.[8]

In Russell v. Stansell, 105 U.S. 303, 26 L.Ed. 989 (1881), a group of landowners sought to enjoin a special assessment tax. They appointed several of their group to represent them in a class action. The Supreme Court held that the interest of each landowner was separate preventing the plaintiffs from aggregating the interests of the class in order to meet the requisite jurisdictional amount. With one single exception, Brown v. Trousdale, 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987 (1891), the Supreme Court has adhered to the view of Russell v. Stansell. See Williams v. Riley, 280 U.S. 78, 50 S.Ct. 63, 74 L.Ed. 175 (1929); Rogers v. Hennepin County, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469 (1916); Wheless v. St. Louis, 180 U.S. 379, 21 S.Ct. 402, 45 L. Ed. 583 (1901); Colvin v. Jacksonville, 158 U.S. 456, 15 S.Ct. 866, 39 L.Ed. 1053 (1895). In Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883 (1920), the Supreme Court refused to allow aggregation of claims in a taxpayers' suit to enjoin the payment of public moneys and the issuance of bonds on the ground that the state's purpose was an unconstitutional one, i. e., the spending of public money for a private use in violation of the Fourteenth Amendment.

■ As we have indicated the present action is controlled by Scott v. Frazier, thereby preventing the aggregation of claims. See Doby v. Brown, 135 F.Supp. 584 (M.D.N.C.1955), aff'd, 232 F.2d 504 (4 Cir.), cert. denied, 352 U.S. 837, 77 S.Ct. 57, 1 L.Ed.2d 55 (1956); Norris v. Mayor and City Council of Baltimore, 78 F.Supp. 451 (D.Md. 1948). It follows that the court below was without jurisdiction to adjudicate the claims of the Fullers.

We come next to the jurisdictional questions as they may affect the Volpes who alleged that they are suing as par-

ents of children in the Englewood public schools. There is no question that they have asserted a separate and independent basis for jurisdiction by their allegations that the children on whose behalf they sue are unconstitutionally being compelled to attend schools determined solely on the basis of race. This allegation presents no problem of jurisdictional amount in controversy. Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954 (1939).

■ However, the question remains whether their intervention can cure the jurisdictional defect thereby giving the district court jurisdiction. It is well-settled that since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a "nonexistent" law suit. United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893 (1914); Hofheimer v. McIntee, 179 F.2d 789 (7 Cir.), cert. denied, 340 U.S. 817, 71 S.Ct. 47, 95 L.Ed. 600 (1950); Pianta v. H. M. Reich Co., 77 F.2d 888 (2 Cir. 1935); Kendrick v. Kendrick, 16 F.2d 744, 745 (5 Cir. 1926), cert. denied, 273 U.S. 758, 47 S.Ct. 472, 71 L.Ed. 877 (1927); Brictson Mfg. Co. v. Woodrough, 284 F. 484, 487 (8 Cir. 1922); Jacobs v. District Director of Internal Revenue, 217 F.Supp. 104 (S.D. N.Y.1963); Becton v. Greene County Board of Education, 32 F.R.D. 220 (E.D. N.Car. 1963); Levenson v. Little, 75 F. Supp. 575 (S.D.N.Y.1948).

■ However, a court has discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor. Hackner v. Guaranty Trust Co., 117 F.2d 95 (2 Cir.), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941); Pikor v. Cinerama Productions Corp., 25 F.R.D. 92 (S.D.N.Y. 1960); Truncale v. Universal Pictures Co., 76 F. Supp. 465 (S.D.N.Y. 1948); In re Raabe,

---

8. Compare 3 Moore, Federal Practice, § 23.13 at 3482–3483 (1964), with Note, Taxpayers' Suits: A Survey & Summary, 69 Yale L.J. 895, 920 (1960), and Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv.L.Rev. 1265, 1281 (1961).

Glissman & Co., 71 F.Supp. 678 (S.D. N.Y. 1947); 4 Moore, Federal Practice § 24.16 at 113–14 (1963). This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay. By allowing the suit to continue with respect to the intervening party, the court can avoid the senseless "delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." Hackner v. Guaranty Trust Co., supra, 117 F.2d at 98. But on the present record, even as it has been supplemented purportedly pursuant to Section 1653, Title 28, U.S.C., we cannot ascertain whether or not the intervening plaintiffs possess *locus standi* to maintain the suit for it does not appear that any of the intervening plaintiffs had any child or children in the sixth grade Engle Street School at the time of the intervention, or presently have a child or children in that grade.[9] We cannot tell from the present record whether any of the children of any of the intervening plaintiffs will be affected by the plan. The plan itself, insofar as the intervening plaintiffs are concerned, involves only the sixth grade. The complaint and petition for intervention alleges only that the children are students in the Englewood public school system, but does not allege the grades that they are in. Some may now be past the sixth grade, thereby rendering their action moot.[10] Some may be only at the first or second grade level, thereby rendering their action premature.[11] Although, as we have said, this court has received affidavits in an attempt to solve this jurisdictional issue, we find the record as presently constituted insufficient to establish jurisdiction. The issue of jurisdiction is one which must be determined by the court below.

Assuming that the court below should find on remand that the intervening plaintiffs have the standing to maintain their suit and therefore possesses the jurisdiction, the power to adjudicate their cause, that court next must examine the operative facts and the law on which the intervening plaintiffs' suit must be based, as the court below shall find these to be in the light of the decision of the Supreme Court of New Jersey in Booker v. Board of Education, 45 N.J. 161, 212 A.2d 1 (1965), as hereinafter pointed out.

Assuming that there is jurisdiction, the trial court may be faced with a unique and anomalous situation. Even if Commissioner Raubinger's plan employed to desegregate the Englewood Schools be held invalid under state law in the light of Booker because it does not go far enough, an issue concerning which we can presently express no opinion, nonetheless the plaintiffs attack the Raubinger Englewood Plan on federal constitutional grounds because in their view it goes too far. But, the Booker decision concerned itself primarily with the Plainfield Plan which is different in some respects, at least, from Raubinger's Englewood Plan though it resembles it in others. A careful examination and comparison of the two plans are necessary and the court below must view the Raubinger Englewood Plan in the light of

---

9. Indeed an inference to the contrary may be drawn from the affidavit of Leroy McCloud, Principal of the "Central Sixth Grade Engle Street School," received in this court on June 10, 1965. The affidavit, which will accompany the record on our remand to the court below, states that none of the intervening plaintiffs had any children in the school "during the current 1964–1965 school year."

10. Doremus v. Board of Education, 342 U.S. 429, 432–433, 72 S.Ct. 394, 96 L.

Ed. 475 (1952). Compare School District of Abington Township v. Schempp, 374 U.S. 203, 224 at n. 9, 83 S.Ct. 1560, 10 L.Ed. 844 (1963).

11. See United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Lynch v. Torquato, 343 F.2d 370, 373 (3 Cir. 1965); Two Guys from Harrison-Allentown, Inc. v. McGinley, 179 F. Supp. 944, 947 (E.D.Pa.1959), aff'd, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961).

the principles laid down in the Booker decision.

Assuming the existence of jurisdiction, the power in the court below to adjudicate the intervening plaintiffs' case, when the Englewood Plan has been examined and compared in the light of Booker, other serious questions may face the court below. Though we cannot and do not attempt here to give an advisory opinion, we think it is appropriate to point out some of the issues which might impel a district court's judgment in the context of this case as it appears to us. First, the court below should inquire into the relevancy of exhaustion of administrative remedies by the plaintiffs in the light of Booker v. Board of Education. See Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276 (1937) and the authorities cited therein. Cf. Reinecke v. Loper, 77 F.Supp. 333 (D.C.Hawaii 1948). Second, should or should not the court below apply the doctrine of abstention in accordance with the principles laid down in Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)? We point out that in the cited case, at 534, 85 S.Ct. at 1182, Mr. Chief Justice Warren stated, "Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." Third, as pointed out in the language we have just quoted from the Forssenius opinion, the decision of the federal constitutional issue which was before the court below at the time of its original decision may have been materially altered by the later decision of the Supreme Court of New Jersey in Booker.[12]

The foregoing are matters which the court below may examine and may adjudicate upon remand as the facts and law may require, and, if necessary, may supplement the record by evidence relating to jurisdictional and other pertinent issues.

The judgment will be vacated and the case will be remanded with the direction to the court below to proceed in accordance with this opinion.

12. The court below did not have the benefit of the decision of the Supreme Court in Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177 (1965) and the decision of the Supreme Court of New Jersey in Booker v. Board of Education, 45 N.J. 161, 212 A.2d 1 (1965), at the date of its decision on June 3, 1964, 230 F.Supp. 25.