983 F.2d 275
 299 U.S.App.D.C. 250
 AERONAUTICAL RADIO, INC. and Air Transport Association of
America, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
TRW Inc., American Mobile Satellite Corporation, AMSC
Subsidiary Corporation and Omninet, Inc., Intervenors.
AERONAUTICAL RADIO, INC., and Air Transport Association of
America, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
TRW Inc., American Mobile Satellite Corporation, AMSC
Subsidiary Corporation and Omninet, Inc., Intervenors.
OMNINET, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
TRW Inc., Aeronautical Radio, Inc., Air Transport
Association of America, American Mobile Satellite
Corporation and AMSC Subsidiary
Corporation, Intervenors.
 Nos. 92-1046, 92-1047 and 92-1049.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 25, 1992.
Decided Jan. 26, 1993.
 
 [299 U.S.App.D.C. 252] Petitions for Review of an Order of the Federal Communications Commission.
 Appeal From an Order of the Federal Communications Commission (No. 91-427).
 Robert J. Butler, with whom John L. Bartlett, Washington, DC, for Aeronautical Radio, Inc., and Donald J. Evans, Washington, DC, for Omninet, Inc., were on the joint brief, for Aeronautical Radio, Inc., appellant in 92-1046, petitioner in 92-1047 and intervenor in 92-1049, for Air Transport Ass'n of America, appellant in 92-1046, petitioner in 92-1047 and intervenor in 92-1049, and Omninet, Inc., petitioner in 92-1049 and intervenor in 92-1046 and 92-1047.
 Donald J. Evans, Washington, DC, was on the brief, for Omninet, Inc.
 Gregory M. Christopher, Counsel, Federal Communications Com'n, with whom Robert L. Pettit, Gen. Counsel and John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., and Catherine G. O'Sullivan and Robert J. Wiggers, Attorneys, Dept. of Justice, Washington, DC, were on the brief, for appellee/respondents in 92-1046, 92-1047 and 92-1049.
 Hadrian R. Katz, with whom Lon C. Levin, Gary M. Epstein, James F. Rogers, Clifford M. Harrington and Bruce D. Jacobs, Washington, DC, were on the brief, for American Mobile Satellite Corp. and AMSC Subsidiary Corp., intervenors in 92-1046, 92-1047 and 92-1049.
 Norman P. Leventhal and Raul R. Rodriguez, Washington, DC, were on the brief for TRW Inc., intervenor in 92-1046, 92-1047 and 92-1049.
 James E. Landry, Washington, DC, entered an appearance for Air Transport Ass'n of America.
 Before: EDWARDS, RUTH BADER GINSBURG and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge EDWARDS.
 Concurring opinion filed by Circuit Judge RUTH BADER GINSBURG.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 In 1985, the Federal Communications Commission ("Commission" or "FCC") proposed to allocate spectrum and establish licensing procedures for a new domestic mobile communications system known as mobile satellite service ("MSS"). The Commission subsequently reallocated a portion of spectrum in the upper L-Band for MSS purposes, declared that the MSS license would be granted to a "consortium" consisting of all willing, qualified applicants, and ruled that any otherwise qualified applicant would be required to make a $5 million cash contribution to the consortium. Various applicants then challenged the Commission's rules regarding the spectrum allocation, the mandatory consortium and the $5 million cash contribution. In 1991, this court vacated the consortium and cash contribution rules, and remanded the case with a direction to the Commission to determine whether it has statutory authority to impose a consortium in lieu of holding comparative hearings. See Aeronautical Radio, Inc. v. FCC, 928 F.2d 428 (D.C.Cir.1991) ("ARINC ").
 
 
 2
 On remand, the Commission addressed the issues raised by the court, as well as others advanced by the parties. First, the Commission purported to find that, in "appropriate circumstances," it possessed the statutory authority to adopt a licensing rule requiring service by a consortium of willing and eligible applicants; the Commission thus reimposed the consortium requirement and recognized American Mobile Satellite Corporation ("AMSC") as the licensee. Second, the Commission refused to reinstate the MSS license application of Omninet, Inc. ("Omninet"), which had withdrawn its application prior to the ARINC decision. Finally, the Commission rejected the allegation that restrictions on ex parte contacts had been violated when the FCC communicated with AMSC over international frequency coordination proceedings, at which the United States sought to ensure that the MSS systems of other nations would not interfere with the operation of this country's domestic MSS system.
 
 
 3
 [299 U.S.App.D.C. 253] Several parties now seek review of the Commission's decisions, including Omninet and Aeronautical Radio, Inc. ("ARINC"),[1] which provides aeronautical mobile satellite service ("AMSS(R)"). ARINC and Omninet contend that the Commission lacks authority to mandate a consortium, and that the consortium rule must therefore be vacated. Omninet further argues that the Commission abused its discretion in declining to reinstate its MSS application. Lastly, ARINC and Omninet allege that the Commission unlawfully engaged in ex parte communications with AMSC during the international proceedings, discussing the merits of the consortium's license application while other, mutually exclusive MSS applications were still pending. ARINC and Omninet thus request that this court set aside the Commission order licensing the consortium.
 
 
 4
 AMSC has intervened in support of the Commission. Intervening in support of Omninet and ARINC is TRW Inc. ("TRW"), which is competing against AMSC to operate a MSS system in a frequency band that AMSC hopes to use for expansion.
 
 
 5
 We dismiss the petitions for review of the consortium rule, because ARINC, Omninet and intervenor TRW have no standing to challenge that rule. Further, although Omninet has standing to challenge the Commission's refusal to reinstate its application, we conclude that the Commission's action did not constitute an abuse of discretion. Finally, we hold that ARINC and Omninet are barred from challenging the alleged violations of the ex parte restrictions.
 
 I. BACKGROUND
 
 6
 The pre-remand history of this case is set forth at length in our earlier decision, see ARINC, 928 F.2d at 433-37, so we will only briefly recount past events here. In 1985, the Commission proposed to allocate spectrum and adopt licensing procedures for the establishment of a domestic MSS system.[2] MSS is a radio communications service that uses satellites to relay radio signals to and from mobile units, such as cars. Twelve parties, including Omninet, submitted applications for the MSS license by the cutoff date of April 30, 1985.
 
 
 7
 In January 1987, the Commission decided to grant the MSS license to a consortium of all qualified applicants, rather than holding comparative hearings,[3] which is the usual method, prescribed by statute, for selecting a licensee.[4] The Commission required each applicant seeking consortium membership to contribute $5 million in cash to an escrow account to demonstrate its financial ability to support the MSS system.[5] On June 12, 1987, Omninet withdrew its application without explanation and ceased further participation in the licensing proceedings.[6] The Commission officially dismissed Omninet's application without prejudice on June 19, 1987.[7] Subsequently, the Commission [299 U.S.App.D.C. 254] dismissed the applications of several other parties that had failed to make the required $5 million cash contribution. The remaining MSS applicants then formed AMSC, which the Commission authorized in August 1989 to operate a MSS system.[8]
 
 
 8
 In the interim, in April 1987, ARINC filed an application with the Commission to provide AMSS(R) in a portion of the spectrum designated for co-primary use by both MSS and AMSS(R). The Commission dismissed ARINC's application on September 10, 1987, because it failed to conform with the Commission's spectrum allocation decisions.[9]
 
 
 9
 ARINC and the dismissed MSS applicants, excluding Omninet (which was no longer party to the FCC proceeding), petitioned this court for review of the Commission's dismissal of their respective applications. The court upheld ARINC's dismissal. See ARINC, 928 F.2d at 445. However, the court reversed the dismissal of the MSS license applicants that had failed to make the required $5 million cash deposit; these applicants were Global Land Mobile Satellite, Inc. ("Global"), Globesat Express ("Globesat") and Mobile Satellite Service, Inc. ("MSSI"). See id. at 453. The court then set aside both the cash contribution rule and the mandatory consortium rule, and remanded the case for the Commission to decide, in the first instance, whether it had statutory authority to impose a mandatory consortium. See id.
 
 
 10
 On remand, the Commission solicited comments from parties "directly affected" by the ARINC decision, including AMSC and the three reinstated MSS applicants.[10] The Commission also accepted comments from other parties, including ARINC. ARINC requested that the Commission reopen the proceedings to new MSS license applicants and hold comparative hearings to select the licensee, rather than impose a consortium. ARINC further indicated that it might file a new AMSS(R) application that properly conformed to the Commission's allocation of spectrum.[11] Despite these gestures, however, ARINC never filed another license application either for MSS or AMSS(R). During the second round of comments, ARINC also contested the Commission's decision to include AMSC in the international frequency coordination proceedings, to the exclusion of the reinstated license applicants and other interested parties. The Commission had refused to reveal the substance of its discussions with AMSC at these proceedings, and ARINC alleged that the discussions violated the Administrative Procedure Act ("APA") and Commission prohibitions on ex parte communications[12] directed to the merits of a pending license application.
 
 
 11
 Omninet did not submit comments on remand, but did request that the Commission reinstate its application for the MSS license, claiming that reinstatement was required by the ARINC decision and by "the public interest."[13] Omninet alleged that it had been "forced" to withdraw its application for the MSS license due to the Commission's unlawful imposition of the cash contribution requirement.
 
 
 12
 On August 2, 1991, and January 6, 1992, the Commission issued two decisions in which it responded to comments and to the ARINC decision.[14] First, the Commission [299 U.S.App.D.C. 255] determined that it had statutory authority to mandate the formation of a consortium of qualified applicants and, also, that it was justified in forming a consortium because an authorized MSS licensee was urgently needed to participate alongside Commission negotiators in the ongoing international frequency coordination process.[15] The Commission therefore retained the consortium arrangement, although it offered consortium membership to the previously dismissed applicants, Global, Globesat and MSSI.
 
 
 13
 Second, the Commission refused to reinstate Omninet's application. The Commission pointed out that Omninet had "voluntarily" removed itself from the proceeding over four years beforehand, and had not participated in the first appeal to this court.[16] The FCC thus found no adequate basis upon which to reinstate the Omninet application.
 
 
 14
 Finally, the Commission rejected ARINC's request to reopen the MSS licensing proceeding to new applicants. In denying ARINC's request, the Commission noted that the ARINC decision had not required that the proceeding be reopened to allow new MSS applicants and that reopening the proceeding would unduly delay decision on a licensee.[17] The Commission also rejected ARINC's contention that AMSC's participation in the international frequency coordination meetings had violated the ex parte rules.[18]
 
 
 15
 Several parties sought review of the Commission's rulemaking and licensing decisions, including ARINC, Omninet, Global and Globesat. Global and Globesat subsequently negotiated settlements with AMSC and are no longer parties to this proceeding. ARINC and Omninet, which are still before the court, mount several challenges to the Commission's decisions. First, both parties contend that the Commission failed to identify any statutory authority for requiring the MSS license applicants to form a consortium. Intervenor TRW joins ARINC and Omninet in this contention. Second, Omninet charges that the Commission abused its discretion in refusing to reinstate Omninet's application for the MSS license. Finally, ARINC, joined by Omninet, again alleges that AMSC's participation in the international proceedings violated the prohibition on ex parte contacts.
 
 II. ANALYSIS
 
 16
 A. The Challenge to the Consortium Requirement
 
 
 17
 ARINC's and Omninet's challenges to the consortium requirement must be dismissed, because neither party has standing to pursue this claim.[19]
 
 1. ARINC
 
 18
 ARINC seeks to challenge the consortium rule as a "disappointed applicant" for a license to provide AMSS(R) in the frequency band that AMSC is designated to [299 U.S.App.D.C. 256] use. This ARINC cannot do. The Commission dismissed ARINC's original AMSS(R) application over four years ago, and this court specifically affirmed that dismissal on the ground that the application violated the spectrum allocation rules. See ARINC, 928 F.2d at 440. Thus, ARINC's claim of improper dismissal was disposed of on final judgment, and was not subject to further reconsideration on remand. ARINC is therefore precluded from relitigating that claim. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action.").
 
 
 19
 ARINC is further barred from seeking review of the consortium rule as a "potential applicant," interested in submitting a new AMSS(R) application that conforms to the Commission's spectrum allocation rules. As this court made clear only last year, a purported applicant for a license "must file a timely application with the FCC before [it] may challenge an adverse Commission order in this court." CPHB, 931 F.2d at 77. Since the dismissal of its original AMSS(R) application in 1987, ARINC has failed to file another application, even though the Commission at one point invited it to do so,[20] and even though ARINC told the Commission it was "considering" submitting such an application.[21] In short, ARINC has no legitimate claim to standing as a "potential applicant" before the FCC.
 
 
 20
 Nor can ARINC assert standing to challenge the consortium rule as a "competitor" of AMSC. See Radiofone, Inc. v. FCC, 759 F.2d 936, 939 (D.C.Cir.1985) (competitors of winning party in agency adjudication may have standing to sue). ARINC maintains that as a provider of international AMSS(R),[22] it faces "serious potential injury" due to the Commission's authorization of AMSC as the sole provider of domestic MSS.[23] The injury ARINC alleges is that AMSC's domestic MSS system, which is slated to use the same frequency band as the AMSS(R) system provided by ARINC for international flights, will interfere with that AMSS(R) system. But this alleged injury, even if it is certain to occur, will not be fairly traceable to the consortium rule. See Lujan, --- U.S. at ----, 112 S.Ct. at 2136. The record indicates that under existing and incipient technology, all MSS systems, not just the system being developed by AMSC, have difficulty sharing frequencies with other systems.[24] Thus, any interference will be traceable not to the consortium requirement, but to the Commission's decision to allocate certain frequencies for use by both MSS and AMSS(R). See ARINC, 928 F.2d at 434-36 (explaining frequency allocation decisions). And, as noted above, the spectrum allocation decision already has been upheld by this court in ARINC, see 928 F.2d at 440, so there is nothing more to be said on this point.
 
 
 21
 At bottom, it is clear that ARINC has no standing to challenge the consortium rule, and it is precluded from relitigating the spectrum allocation.
 
 2. Omninet
 
 22
 Omninet seeks review of both the Commission's consortium requirement and the Commission's refusal to reinstate its MSS license application. We conclude that Omninet, too, is barred from contesting the consortium rule; we further hold that the Commission did not abuse its discretion in [299 U.S.App.D.C. 257] declining to reinstate Omninet's application.
 
 
 23
 Omninet bases its standing argument on our decision in ARINC, asserting that it stands in the same posture as did the dismissed license applicants in the earlier proceeding. Specifically, Omninet now alleges that it did not "voluntarily" dismiss its own application, as the Commission maintains.[25] Rather, Omninet contends, it was forced to withdraw its application on June 12, 1987, due to the Commission's unlawful cash contribution requirement. Omninet argues that this "constructive dismissal" amounts to the same injury in fact suffered by the MSS applicants in ARINC, and that the injury, like that suffered by the ARINC applicants, is fairly traceable to the consortium requirement.
 
 
 24
 Omninet's assertion that it withdrew because of the cash contribution rule is belied by the facts. Indeed, not a shred of evidence in the record supports this allegation, and there is clear evidence to the contrary. On April 13, 1987, a scant two months prior to its purportedly forced withdrawal, Omninet and several other applicants filed with the Commission a document vigorously supporting the Commission's consortium and cash contribution rules.[26] In that document, Omninet asserted that "a mandatory consortium structure for the new MSS service does not deprive applicants of any hearing rights," and further stated that "the Commission's [cash contribution] requirement has a rational basis in fact and is therefore not arbitrary and capricious."[27] Omninet's allegation of compulsion is further undone by the fact that Omninet withdrew from the licensing proceeding after the Commission modified the cash contribution requirement and provided applicants the less onerous option of submitting letters of credit or performance bonds in lieu of a cash deposit.[28]
 
 
 25
 We are persuaded from this uncontradicted evidence that Omninet was not "forced" to withdraw its application because of the Commission's consortium and cash contribution rules. Rather, Omninet withdrew voluntarily, and the FCC was not obliged (nor did it have any good reason) to reinstate Omninet's application on remand. Because it was not a bona fide applicant before the Commission on remand, we find that Omninet fails to meet the injury-in-fact and causation requirements sufficient to establish Article III standing to contest the consortium rule.
 
 
 26
 Moreover, Omninet's claim that it was "forced" to withdraw comes too late in this proceeding. We have long disapproved of parties foregoing an immediate appeal of administrative action while others pursue review: "[A] person should not be entitled to sit back and wait until all interested persons who [appeal] have been heard, and then complain that he has not been properly treated." Spanish Int'l Broadcasting Co. v. FCC, 385 F.2d 615, 627 (D.C.Cir.1967) (quoting Red River Broadcasting Co., Inc. v. FCC, 98 F.2d 282, 286 (D.C.Cir.), cert. denied, 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400 (1938)). Omninet fits no exception to this rule that we can identify; had Omninet wished to contest an allegedly forced withdrawal, purportedly attributable to the cash contribution and/or the consortium requirements, it should have done so two years ago, along with the other parties before this court in ARINC.
 
 
 27
 [299 U.S.App.D.C. 258] Nor does Omninet help its cause by emphasizing that the Commission dismissed its application "without prejudice,"[29] a point Omninet makes presumably to emphasize that it had nothing to appeal when the other MSS applicants sought judicial review. A dismissal without prejudice leaves the parties as if the proceeding "had never been brought." National R.R. Passenger Corp. v. International Ass'n of Machinists, 915 F.2d 43, 48 (1st Cir.1990) (quotation omitted). Viewed in this light, Omninet never had a MSS license application pending before the Commission--in which case Omninet is still barred from seeking review of the consortium requirement. As we held in CPHB, an applicant for a license can only challenge an adverse Commission order if the applicant has filed a timely application. See CPHB, 931 F.2d at 77.
 
 
 28
 Omninet may, however, challenge as an abuse of discretion the Commission's refusal to reinstate its MSS application to the licensing proceeding. See 5 U.S.C. § 706(2)(A) (1988); City of Angels Broadcasting, Inc. v. FCC, 745 F.2d 656, 663 (D.C.Cir.1984) (noting that party seeking waiver of Commission's cutoff rules bears burden of convincing Commission that a departure is warranted, and that the burden is "even heavier" on appeal) (quotation omitted). Because Omninet provides absolutely no reason to justify its reinstatement (other than the infirm assertion that it was unfairly forced to withdraw from the proceeding), we conclude that the Commission did not abuse its discretion in declining to reinstate the application.
 
 3. Intervenor TRW
 
 29
 Finally, we dismiss TRW, which has intervened on behalf of ARINC and Omninet in the interest of challenging the consortium requirement. The general rule is that "[i]ntervention presupposes the pendency of an action in a court of competent jurisdiction...." CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1917, at 457 (2d ed. 1986) (footnote omitted).[30] This rule is routinely applied to dismiss an intervenor where the court lacks jurisdiction over the original action. See, e.g., Simmons, 716 F.2d at 46; Fuller v. Volk, 351 F.2d 323, 328 (3d Cir.1965) ("intervention will not be permitted to breathe life into a 'nonexistent' law suit") (citation omitted).[31]
 
 
 30
 Nor is there an "independent jurisdictional basis" for TRW's challenge to the consortium rule, which might otherwise allow TRW to continue the action. Simmons, 716 F.2d at 46 (even if court lacks jurisdiction over action brought by original parties, intervenor may continue suit if it provides an independent jurisdictional basis). TRW has pending before the Commission an application to use the 1610-1626.5 MHz frequency band, into which AMSC now hopes to expand;[32] it alleges that, if the consortium rule is not overturned, "the Commission is likely to attempt to adopt the use of mandatory consortia in the pending MSS licensing proceedings for the [299 U.S.App.D.C. 259] 1610-1626.5 MHz band[ ]...."[33] There is no indication in the record, however, that the Commission is "likely to attempt" to require a consortium in the MSS proceeding involving the 1610-1626.5 MHz frequency band. TRW's alleged injury is therefore merely conjectural. This is insufficient to satisfy the requirements of Article III standing. See City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (injury alleged must be "real and immediate, not conjectural or hypothetical") (quotations omitted).
 
 
 31
 Moreover, "we know of no authority recognizing that the mere potential precedential effect of an agency action affords a bystander to that action a basis for complaint." Shipbuilders Council of America v. United States, 868 F.2d 452, 456 (D.C.Cir.1989); see also Radiofone, 759 F.2d at 939 (petitioner's "injury must still arise from the particular activity which the agency adjudication has approved ... and not from the mere precedential effect of the agency's rationale in later adjudications"). In short, "[intervenor's] plea is, essentially, a request for judicial advice--a declaration that a line of agency rulings should henceforth have no precedential effect. Such pronouncements, abstracted from any actual adjudication, rulemaking, or other agency order, are not within the ken of article III courts." Shipbuilders, 868 F.2d at 456.
 
 
 32
 Because TRW cannot meet the Article III standing requirements, we dismiss it from this suit. Cf. Simmons, 716 F.2d at 46 ("[The intervenor] must be dismissed ... because the original party lacked a jurisdictional basis and because [the intervenor] has no jurisdictional basis of its own.").
 
 
 33
 4. Status of the Challenges to the Consortium Requirement
 
 
 34
 Because ARINC, Omninet and TRW are barred from challenging the consortium rule, we do not reach the merits of that challenge. We emphasize, however, that nothing in our decision today should be read to suggest that the court accepts the Commission's position that it possesses statutory authority to impose the formation of a mandatory consortium of license applicants in lieu of holding comparative hearings. In ARINC, we doubted the Commission's authority to bypass comparative hearings in these circumstances. See ARINC, 928 F.2d at 453 (calling "dubious" the suggestion that the Commission has authority to mandate a consortium). That concern remains, but its resolution must await another day.
 
 
 35
 B. The Alleged Violation of the Ex Parte Restrictions
 
 
 36
 Finally, we dismiss the claim made by ARINC and Omninet that AMSC's participation in the international frequency coordination meetings violated the restrictions on ex parte contacts imposed by the APA and the Commission's rules. See 5 U.S.C. § 557(d); 47 C.F.R. §§ 1.1200-.1216.[34] ARINC and Omninet argue that the prohibitions on ex parte contacts were violated as a result of AMSC's participation in numerous meetings with foreign countries, during which AMSC apparently discussed with Commission officials certain technical aspects of its proposed MSS system.[35] ARINC and Omninet point out that during the period in which AMSC participated in the international proceedings, the MSS applicants ordered by the court to be reinstated to the licensing proceeding--Global, Globesat and MSSI--were still before [299 U.S.App.D.C. 260] the Commission, competing for the MSS license. ARINC and Omninet conclude that the ex parte communications between AMSC and the Commission "irreparably tainted" the Commission's decision to choose AMSC as the MSS licensee.[36] They therefore ask that we reverse the Commission's decision awarding the license to AMSC, and direct the Commission to disclose the information exchanged between the Commission and AMSC, in order that the Commission "can then proceed to choose the best MSS licensee predicated on [permissible] criteria...."[37]
 
 
 37
 The Commission responds to these charges by asserting that its communications with AMSC did not involve the merits of AMSC's application, and that, in any event, the communications were authorized by the Commission's rules[38] and fell within the foreign affairs exception to the ex parte restrictions.[39] We need not reach the merits of the claims relating to the ex parte rules because the only parties suffering any potential injury attributable to the alleged violations--Global, Globesat and MSSI--are not before the court. Neither ARINC nor Omninet had viable applications pending before the Commission at the time of the alleged ex parte contacts. Therefore, we can discern no basis whatever upon which either ARINC (whose application was properly dismissed by the Commission) or Omninet (whose application was voluntarily withdrawn) may now seek to disqualify AMSC because of any alleged ex parte contacts. This brings us back to ground we already have covered: the petitions of ARINC and Omninet must fail for lack of standing and a failure to exhaust administrative remedies. See note 19 supra. We will not "second-guess[ ] agency decisions at the behest of litigants who have never been in a position to benefit from the decision they seek from us." CPHB, 931 F.2d at 78. Accordingly, we dismiss the challenge to the alleged ex parte violations.
 
 III. CONCLUSION
 
 38
 For the foregoing reasons, we conclude that no party is properly before this court to seek review of the consortium rule, and we therefore dismiss the petitions for review filed by ARINC and Omninet, and we further dismiss TRW. In addition, we affirm the Commission's refusal to reinstate Omninet's MSS license application. Lastly, we hold that ARINC and Omninet are precluded from challenging the lawfulness of any ex parte contacts that may have occurred during AMSC's participation in the international frequency coordination proceedings.
 
 
 39
 So Ordered.
 
 
 40
 RUTH BADER GINSBURG, Circuit Judge, concurring:
 
 
 41
 This clear case does not appear to me to present any issue of constitutional dimension. Based on the procedural lapses described in Judge Edwards' opinion, the complainants are disqualified from pursuing court review of the Commission's consortium rule. ARINC did not file a qualifying application within the cutoff date. Omninet removed itself from the fray in 1987 and the Commission was not obliged to let it reenter four years later. TRW may not call upon us to supply "judicial advice" that will aid it in another proceeding. The matter of Article III "standing" limits on judicial power, in my judgment, should form no part of our analysis. See generally Cass R. Sunstein, What's Standing After Lujan? Of Citizen Suits, "Injuries," and Article III, 91 MICH.L.REV. 163 (1992). While I disassociate myself from the statements concerning standing, in all [299 U.S.App.D.C. 261] other respects I concur in Judge Edwards' opinion.
 
 
 
 [1]
 ARINC was joined by the Air Transport Association of America, an unincorporated trade association representing the interests of air carriers, in all of its challenges, both before this court and in the proceedings before the Commission on remand. We refer only to ARINC in the opinion
 
 
 [2]
 See Rules To Allocate Spectrum for, To Establish Rules and Policies Pertaining to, the Use of Radio Frequencies in Land Mobile Satellite Service for Various Common Carrier Services, 50 Fed.Reg. 8149 (1985) ("Notice of Proposed Rulemaking ")
 
 
 [3]
 See Amendment of Parts 2, 22 and 25 of the Commission's Rules to Allocate Spectrum for, and to Establish Other Rules and Policies Pertaining to the Use of Radio Frequencies in a Land Mobile Satellite Service for the Provision of Various Common Carrier Services, 2 F.C.C.Rcd 485, 486 (Jan. 26, 1987) ("Consortium Order ")
 
 
 [4]
 See 47 U.S.C. § 309(e) (1988); Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 333, 66 S.Ct. 148, 151, 90 L.Ed. 108 (1945) (where there are two bona fide, mutually exclusive applications, the Commission must hold comparative hearings)
 
 
 [5]
 See Consortium Order, 2 F.C.C.Rcd at 488
 
 
 [6]
 See Letter from Allen Salmasi, President, Omninet Corporation, to William J. Tricarico, Secretary, Federal Communications Commission (June 12, 1987), reprinted in Joint Appendix ("J.A.") 226
 
 
 [7]
 See Letter from James R. Keegan, Chief, Domestic Facilities Division, Common Carrier Bureau, to W. Theodore Pierson, Jr., Counsel, Omninet Corporation (June 19, 1987), reprinted in J.A. 227 ("Dismissal Letter")
 
 
 [8]
 See Amendment of Parts 2, 22 and 25 of the Commission's Rules to Allocate Spectrum for and to Establish Other Rules and Policies Pertaining to the Use of Radio Frequencies in a Land Mobile Satellite Service for the Provision of Various Common Carrier Services, 4 F.C.C.Rcd 6041 (Aug. 4, 1989) ("Licensing Order ")
 
 
 [9]
 See Aeronautical Radio, Inc., 2 F.C.C.Rcd 5990, 5991 (Sept. 10, 1987)
 
 
 [10]
 Public Notice, Report No. DS-1072 (Apr. 4, 1991), reprinted in J.A. 229
 
 
 [11]
 See Comments of Aeronautical Radio, Inc. and the Air Transport Association of America at 19, Gen. Docket No. 84-1234 (Apr. 11, 1991), reprinted in J.A. 264 ("ARINC Comments")
 
 
 [12]
 See 5 U.S.C. § 557(d) (1988); 47 C.F.R. §§ 1.1200-.1216 (1991)
 
 
 [13]
 Request for Permission to Resubmit Applications at 2 (Apr. 15, 1991), reprinted in J.A. 316
 
 
 [14]
 See Amendment of Parts 2, 22 and 25 of the Commission's Rules to Allocate Spectrum for and to Establish Other Rules and Policies Pertaining to the [Use of Radio Frequencies in a Land] Mobile Satellite Service for the Provision of Various Common Carrier Services, 6 F.C.C.Rcd 4900 (Aug. 2, 1991) ("Tentative Decision "); Amendment of Parts 2, 22 and 25 of the Commission's Rules to Allocate Spectrum for and to Establish Other Rules and Policies Pertaining to the Use of Radio Frequencies in a Land Mobile Satellite Service for the Provision of Various Common Carrier Services, 7 F.C.C.Rcd 266 (Jan. 6, 1992) ("Final Decision ")
 
 
 [15]
 See Final Decision, 7 F.C.C.Rcd at 267-71
 
 
 [16]
 Id. at 274
 
 
 [17]
 See Tentative Decision, 6 F.C.C.Rcd at 4914
 
 
 [18]
 See Final Decision, 7 F.C.C.Rcd at 273
 
 
 [19]
 To establish standing, a litigant must show (1) an injury-in-fact that is both (2) fairly traceable to the challenged action and (3) likely to be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)
 In dismissing ARINC's and Omninet's challenges, we have relied in part on our decision in Coalition for the Preservation of Hispanic Broadcasting v. FCC, 931 F.2d 73 (D.C.Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991) ("CPHB "), a case that denies the challenges of two petitioners for failure to exhaust administrative remedies. We recognize that the Article III standing doctrine and the exhaustion doctrine are analytically distinct, with only the former directly implicating the court's jurisdiction. In this case, we find that both doctrines are applicable, but we rest principally on petitioners' lack of standing. In any event, the result is the same, because petitioners are not properly before the court and no party with standing has raised a claim challenging the consortium rule.
 
 
 [20]
 See Licensing Order, 4 F.C.C.Rcd at 6048
 
 
 [21]
 ARINC Comments at 19
 
 
 [22]
 ARINC alleges that it provides AMSS(R) for aircraft flights between the United States and a foreign destination, and between two foreign destinations. Since AMSC is authorized to provide domestic MSS up to 200 miles beyond the United States coastline, AMSC and ARINC have overlapping service areas. See Licensing Order, 4 F.C.C.Rcd at 6060
 
 
 [23]
 Reply Brief for Appellants/Petitioners Aeronautical Radio, Inc., and Air Transport Association of America at 5
 
 
 [24]
 See Notice of Proposed Rulemaking, 50 Fed.Reg. at 8156
 
 
 [25]
 Tenative Decision, 6 F.C.C.Rcd at 4914
 
 
 [26]
 See Joint Opposition to Global Land Mobile Satellite, Inc.'s Petition for Reconsideration, Gen. Docket No. 84-1234 (Apr. 13, 1987) ("Joint Opposition to Global"). This document was filed with the court by intervenor AMSC, and was not part of the record initially submitted. We take judicial notice of the document. See, e.g., Conecuh-Monroe Community Action Agency v. Bowen, 852 F.2d 581, 583 (D.C.Cir.1988) (taking judicial notice of administrative decision not included in the record)
 
 
 [27]
 Joint Opposition to Global at 11, 18 (capitalization modified)
 
 
 [28]
 See Amendment of Parts 2, 22 and 25 of the Commission's Rules to Allocate Spectrum for, and to Establish Other Rules and Policies Pertaining to the Use of Radio Frequencies in a Land Mobile Satellite Service for the Provision of Common Carrier Services, 2 F.C.C.Rcd 2417, 2417 (Apr. 6, 1987)
 
 
 [29]
 Brief of Omninet Corporation at 4 (emphasis omitted) (referring to Dismissal Letter, supra note 7)
 
 
 [30]
 Under the Hobbs Act, a party seeking review of a Commission order pursuant to 47 U.S.C. § 402(a) (1988) must file a petition for review within 60 days after entry of the order. See 28 U.S.C. § 2344 (1988); Simmons v. ICC, 716 F.2d 40, 46 (D.C.Cir.1983). This 60-day period is jurisdictional. See Natural Resources Defense Council v. NRC, 666 F.2d 595, 602 (D.C.Cir.1981). A party that has filed for intervention in a "jurisdictionally defective" suit cannot continue the suit if the party's filing came more than 60 days after the Commission's order was entered. Simmons, 716 F.2d at 46. To allow otherwise would enable a party "to perfect an appeal beyond the 60-day period which the statute prescribes." Id. As it is, TRW avoided this pitfall by filing its notice with the court on February 20, 1992, 45 days after the Commission issued its order (January 6, 1992)
 
 
 [31]
 Even if we dismissed the ARINC and Omninet petitions solely for failure to exhaust administrative remedies, see note 19 supra, TRW still would lack standing as an intervenor absent some independent jurisdictional basis
 
 
 [32]
 AMSC is currently licensed only to use the 1646.5-1660.5 MHz band and the 1545-1559 MHz band. See Licensing Order, 4 F.C.C.Rcd at 6048
 
 
 [33]
 Intervenor's Brief in Support of Petitioners at 5
 
 
 [34]
 Section 557(d) prohibits ex parte communications "relevant to the merits of the proceeding" between an "interested person" and an agency decisionmaker. 5 U.S.C. § 557(d)(1)(A), (B). The Commission's rules impose similar requirements. See 47 C.F.R. §§ 1.1202, 1.1208
 
 
 [35]
 See Tentative Decision, 6 F.C.C.Rcd at 4909 (noting that AMSC had participated in six international coordination meetings through July 1991, with further meetings scheduled); Robert J. Butler, 6 F.C.C.Rcd 5414, 5418 (Sept. 17, 1991) (discussing meetings with the Soviet Union in which AMSC participated). The Commission defends AMSC's participation as critical in making technical and economic tradeoffs with other countries. See Tentative Decision, 6 F.C.C.Rcd at 4908
 
 
 [36]
 Joint Brief for Petitioners at 33
 
 
 [37]
 Id. at 38
 
 
 [38]
 See 47 C.F.R. § 1.1204(b)(1) (exempting ex parte communications that are authorized by the Commission's rules); 47 C.F.R. § 25.111(b) (1991) (requiring applicants to provide the Commission with all information it requires for international coordination of frequency assignments)
 
 
 [39]
 See 5 U.S.C. § 554(a)(4) (1988); 47 C.F.R. § 1.1204(b)(4)